E. H. FLANNERY, Appellee, v. INTERURBAN RAILWAY COMPANY, Appellant.

**NEGLIGENCE: Crossing Railway Track Ahead of Approaching Car—**
1 **Street Railroads.** Observing an approaching car as one nears a street railway crossing does not, on the question of negligence, necessarily demand a stop and wait before attempting to cross.

PRINCIPLE APPLIED: Collision at street railway crossing. There was evidence: That plaintiff, going east in an auto, traveling twelve miles per hour, was 70 feet from a street railway crossing when he first saw the car at an alley, 180 feet to the north, and approaching at apparently the same speed; that plaintiff did not stop or then slacken speed, because he ,thought he had ample time to clear the crossing; that the car had just previously stopped two car lengths north of the alley and, owing to its mechanism, could not be started with a rush; that from the alley south, the street was slightly down grade; that within 12, 25 or 40 feet of the crossing, plaintiff discovered that the street car was going faster than he had supposed, and the clutch and foot brake, but not the emergency, were applied; that no gong was heard; that plaintiff's car could have been stopped within 20 or 30 feet. The ordinance speed limit, applying to the street railway only, was not to exceed twelve miles per hour. *Held,* the question of plaintiff's contributory negligence was for the jury.

NEGLIGENCE: "Stop, Look and Listen" Rule Inapplicable When Train Is Seen—Street Railroads. The "stop, look and listen" rule has no application where the injured person saw the approaching train, the issue being whether he acted with reasonable prudence in attempting to cross the track ahead of the train.

STREET RAILROADS: Expiration of Franchise—Continued Use of Streets—Ordinance Limiting Speed—Validity. A holding of the court of last resort that, under an ordinance, the *franchise* of a street railway company had expired, does not impliedly repeal a section of the said ordinance limiting the speed of cars when the company availed itself of an order of court granting it permission to occupy the streets for a named period in which to negotiate a new franchise.

NEGLIGENCE: Evidence—Inadmissibility to Prove Negligence Not Pleaded—When Otherwise Admissible. Evidence inadmissible to prove negligence on the part of defendant, because not pleaded, may yet be admissible to prove plaintiff's freedom from contributory negligence.

PRINCIPLE APPLIED: The plaintiff pleaded that defendant was negligent on the one ground that the speed of the car was excessive. Plaintiff testified that he heard no warning signals from the car and that none were given. *Held* proper when specifically limited to the question of plaintiff's contributory negligence.

EVIDENCE: Conclusions—Exclusion. Questions calling for the mere conclusion or speculation of a witness should be excluded.

PRINCIPLE APPLIED: The witness, testifying as to her operation of an auto, stated that her husband said: "My God, it (a street car) is going to strike the children." The witness was then asked: "He saw apparently that you could not control the car?" *Held* properly excluded, because calling for the conclusion of the witness as to what the husband apparently saw.

EVIDENCE: Negligence—"Belief" as to Absence of Danger—Competency. One's "belief" as to the absence of danger may be competent testimony. For instance, one may properly testify that, in proceeding toward a street railway crossing, with an approaching car in sight, he "believed there was no danger."

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

TUESDAY, SEPTEMBER 21, 1915.

ACTION to recover damages claimed to have resulted from a collision between plaintiff's automobile and one of defendant's cars. Judgment in the court below for the plaintiff. Defendant appeals.—*Affirmed.*

*Parker, Parrish & Miller* and *Arthur G. Rippey,* for appellant.

*E. J. Kelley,* for appellee.

GAYNOR, J.—On the afternoon of June 16, 1913, about 3 o'clock, the plaintiff and his wife and children were riding in an automobile. The wife was driving and plaintiff was sitting by her side. The children were in the rear seat.

The defendant is an interurban railway company and was operating one of its interurban cars on the streets of Des Moines. At this particular time, it was operating its car on Fourteenth Street. Fourteenth Street runs north and south. Capitol Avenue runs east and west. The plaintiff was proceeding eastward on Capitol Avenue. Defendant's car was proceeding southward on Fourteenth Street. At the intersection of these streets, the collision occurred of which complaint is made. In the collision, the plaintiff claims that he and his wife were injured, and his automobile damaged. He brings this action to recover all the damages sustained, his wife having assigned to him her claim for damages against the company.

The negligence charged against the defendant company is that it was running its car, at the time of the collision, negligently, in that it was driven at a dangerous rate of speed as it approached the crossing over which plaintiff was required to pass, and that the speed at which it was operated was in violation of the ordinance of the city, reading as follows:

"No car shall run at a greater rate of speed within the business portion of the city than eight miles an hour, nor

shall the same be run in any other portion of the said city
at a greater rate of speed than twelve miles an hour.''

Defendant's answer to plaintiff's claim is a general
denial. Upon the issues thus tendered, the cause was tried
to a jury and a verdict returned for the plaintiff, and judg-
ment being entered thereon, defendant appeals.

It appears that, at the conclusion of all the testimony,
the defendant filed the following motion for a verdict in its
favor upon the record as made:

1. There is no sufficient evidence upon which the jury
would be warranted in returning a verdict against the de-
fendant in this case.

2. There is no sufficient evidence which would warrant
the court in submitting the question of the defendant's neg-
ligence to the jury in this case.

3. Under the evidence in this case, if a verdict were
returned against the defendant by the jury, it would be the
duty of the court to set such verdict aside.

4. The evidence in this case fails to show that the plain-
tiff or his wife or the driver of the automobile in question
was free from contributory negligence.

5. The evidence in this case affirmatively shows that the
plaintiff or his wife or the driver of the automobile in ques-
tion was guilty of negligence which directly contributed to
the injuries sued on and claimed in this action.

This motion was by the court overruled, and this action
of the court is assigned as error. The correctness of the
ruling depends upon the evidence before the court, at the
time the motion was made. This evidence, so far as ma-
terial, is substantially as follows.

We recite first the evidence about which there is prac-
tically no controversy in the record.

Capitol Avenue, on which plaintiff was driving, is 32
feet between the curbing. Fourteenth Street is 34 feet wide,

substantially, and the distance from the center of defend-
ant's track to the curbing east is 17 feet, 2

**1. NEGLIGENCE: crossing railway track ahead of approaching car: street railroads.**

inches. From the center of the track to the
curbing west is 17 feet, 3 inches. There is an
alley opening on the west side of Fourteenth
Street, north of Capitol Avenue. This alley
is 18 feet wide. From this alley to the north curbing on
Capitol Avenue is 156 feet, and the distance from the alley
to the south curbing on Capitol Avenue is 188 feet.

Plaintiff and his wife claim that they were on Capitol
Avenue, 60 or 70 feet west of defendant's track, at the time
they first saw the defendant's car; that defendant's car was,
at that time, at or north of the alley; that plaintiff was driv-
ing his car three or four feet off the south curbing,—that is,
the south side of the automobile was three or four feet from
the curb line on the south side of Capitol Avenue; that
they continued to drive in that position until immediately
before the collision. Plaintiff testifies that he had a speedom-
eter on his automobile; that he looked at it while proceed-
ing eastward on Capitol Avenue, and saw and remembers
that the automobile was traveling less than twelve miles an
hour. Defendant's car, then, must have traveled approxi-
mately 180 feet while plaintiff's car was moving 60 or 70
feet. In order to bring about the collision, defendant's car
must have been traveling approximately about three times
as fast as plaintiff's car. If plaintiff's car was traveling, as
he says, at twelve miles an hour, defendant's car must have
been traveling approximately 35 or 36 miles an hour. Assum-
ing that the defendant's car was at the south side of the
alley when first seen by plaintiff, and assuming that plaintiff
was 70 feet from defendant's tracks at that time, and assum-
ing that plaintiff's car was three feet in width (although
there is no evidence of the width of the car), we have this
state of the record: The north side of plaintiff's car was
six feet from the south curb line of Capitol Avenue, or 26
feet from the north curb line of Capitol Avenue. The north

curb line of Capitol Avenue is 156 feet from the south line of the alley. The north side of the car then would have been 182 feet from the south line of the alley, or 182 feet south of defendant's car at the time it was first seen by the plaintiff. Defendant's car must have passed over a distance of 182 feet while plaintiff's car was passing over a distance of 70 feet. Defendant's car was then traveling two and three-fifths times as fast as plaintiff's car. If plaintiff's car was traveling at 12 miles an hour, defendant's car must have been traveling at least 31 miles an hour.

The evidence discloses without controversy that defendant's car came from the west on Grand Avenue and turned to the south at that point on Fourteenth Street; that when the car turned from Grand Avenue onto Fourteenth Street, it stopped, with the front end of the car about 52 feet south of Grand Avenue, on Fourteenth Street. The distance from the south curb line of Grand Avenue to the south side of Capitol Avenue is 354 feet. The south end of the car must then have been 302 feet from the south curb line of Capitol Avenue when it started south. At the time the car started, it was about 114 feet north of the south side of the alley, the point at which plaintiff first claims to have seen the car. The car then must have run about twice its length at the time it was first seen by the plaintiff. Defendant's car was about fifty-two feet long.

Plaintiff claims that, at the time he first saw the car, it appeared to him to be not exceeding the speed at which he was traveling, twelve miles an hour. Upon this point, the defendant's testimony shows that you cannot start a car with a rush; that it has an automatic relay that prevents feeding the car too fast; that you can feed it only so fast, otherwise it trips,—the relay trips. The effect of the tripping is to disconnect the power. It throws the current off and you have to go back and start over again. It is apparent, therefore, that in running a car the feeding is regulated by the automatic relay on the car, and that the speed is gradually

increased by this gradual feeding process. If the car passed over the intervening space from its starting point to the point of collision while the plaintiff was traveling sixty or seventy feet at twelve miles an hour, this car must have averaged a speed of at least thirty miles an hour. It would seem, therefore, that it was even exceeding this speed at the time of the collision, because something must have been lost in speed at the starting point.

It is true that estimates of time and distance are very unsatisfactory in determining time and distance. So much depends upon the ability of the witness to make accurate estimates, and upon the observation made at the time; but the eye can locate a point at which a thing is seen with reference to some other definite existing point, and measurements will determine distance. Knowing the point from which two objects start, and the distance over which they pass in meeting, if we can learn, with any definiteness, the speed at which one of the objects was moving, and the distance over which it passed, we can mathematically determine how fast the other object was moving, by knowing the distance over which it passed in reaching the point of collision. This is what we are able to do in this case with some degree of accuracy.

This brings us to a consideration of the grounds on which the defendant asks the court to direct a verdict in its favor. Was the plaintiff or his wife guilty of contributory negligence in not doing other than they did to avoid the collision with defendant's car? Did they act as reasonably prudent, careful persons would act under like circumstances and under the same conditions in which they found themselves at that particular time? There is no fixed rule by which the conduct of people can be measured in matters of this kind. It is true that this court has said in many cases, speaking of commercial railways, that a railroad track is a signal of danger in itself; that it suggests danger, and

2. NEGLIGENCE: "stop, look and listen" rule inapplicable when train is seen: street railroads.

that the care in approaching it should be commensurate with the suggested danger; that it is the duty of parties approaching such danger to use their senses to avoid injury—to stop, to look, to listen.   But this rule that a party is required to stop, look and listen does not apply, under all circumstances, to one approaching a street railway track laid upon the streets of a city.   Indeed, there is no hard and fast rule with respect to these matters.   It would be idle to apply it here. They saw the car coming; they could have stopped.   Looking and listening would have added nothing to what they already knew.   The only thing that excuses the conduct of these parties is the speed at which defendant's car was being moved.   They say that when they saw it, it appeared to them not to be exceeding the speed at which they themselves were traveling; that if that were true, they had time to pass beyond the track several feet before the car could reach the point at which they desired to cross.   It stands to reason, and the record tends to support it, that, at the time the car reached the alley, it was not going at any considerable rate of speed. It had not proceeded southward to exceed 114 feet at that time.   The speed must necessarily have been greatly accelerated from that point on.   That the motorman was increasing the speed of the car was not observed by the plaintiff or his wife until after it got so near that they were unable to extricate themselves from the peril.

On Fourteenth Street, there is a fall to the south of 10 inches to 100 feet between Grand and Capitol Avenues. Plaintiff's wife, who was driving the car, testifies:

"I saw the car about the alley.   It must have been a little north of the alley.   We both observed the car at the same time.   When we saw the car, we didn't slacken our speed.   When our automobile got closer to the track, I saw it was coming down the hill so very fast that it was going to strike.   My husband then put his foot on the clutch and told me to put my foot on the brake, which I did.   We prob-

ably got over the front car track when we were struck, I don't really know how far it was when we were struck. We were ten or twelve feet from the track when we applied the brake. I applied the brake with my foot and raised myself up in my seat when I saw my car was not stopping, I put my entire weight on the brake. I had operated that automobile before. I stopped it twice on the way coming up that day. The interurban car, at the time of the accident, was running about 30 to 35 miles an hour. My car was running 10 or 12 miles an hour. At the time we first saw the interurban, we were 60 or 70 feet from the track. We saw the car approaching before we were struck.''

She was then asked these questions:

''Q. You had seen the car approaching at the time? A. Yes, sir. Q. And going at a high rate of speed? A. What was going at a high rate of speed, the interurban? Q. Yes, the car. A. Yes, but I didn't realize it was going so fast as it was. I never thought it was going very fast when I first saw it, if that is what you mean. Q. Well, you saw it, Mrs. Flannery, and observed the speed at which it was going when you first observed it, didn't you? A. No, I never thought really of its going so fast at first. No, I didn't. Q. When did you begin to think about how fast it was going? A. When I got within about 10 or 12 feet I saw it was going so very much faster than we were, it was going to strike us. Q. There was nothing that obstructed your view of it all that time, was there? A. Well, not after we got—if one is at the south side of Capitol Avenue, you can see about as far as the alley. Q. This approaching interurban car was in sight all the time from the time you first saw it until you struck it? There was nothing whatever to obstruct your view of it? A. No. Q. And yet the question of the speed of that car never occurred to you until you got to within about 12 feet of the track? A. No, sir. I thought it was going about the way we were and it was about

four times as far from the intersection as we were, and we would be about 100 feet on the other side of it at the time it got there. Q. Did you think about that at the time? A. Yes, sir. Q. When you were within 10 feet of the track, you saw the interurban car was about 40 feet from you? A. It must have been. I don't know just about how far it was then. My mind was mostly on my own car then, and not on the interurban. Q. You were trying to get across ahead of it? A. We thought at first we would get 100 feet the other side of it if it was going at the same rate we were, it being about four times as far. Q. Now, you thought about all that at the time, did you? A. Yes, sir. Q. You figured on the rate of speed you were going and on the rate of speed the car was going? A. Yes, sir. We went along about the same rate of speed after we saw the car until we were struck.''

She further testified that she knew what a clutch was; that nothing had been done with the clutch until she saw it was going to strike; that they were then ten or twelve feet from the track. The husband put his foot on the clutch and told her to put her foot on the brake, which she did. She testified:

''I did not have my foot on the brake up to that time. It never occurred to me to attempt to do anything with the brake up until that time. It never occurred to me that it would be a safe thing for me to have my foot on the brake. My foot was not directly on the brake. It was half an inch from it. He put his foot on the clutch about the same time I put my foot on the brake. My husband took hold of the wheel and tried to turn the car from the track. I made no attempt to stop the car before my husband told me to put my foot on the brake. There was nothing to prevent me from stopping the car if I had thought that the interurban was going to strike. We both had hold of the wheel at the same time. While he held the wheel, I was turning it with him. We were both trying to turn the wheel. When we both

took hold of the wheel, we were just on the street car track. We were right over the first rail. The motion of our car did not slow up any after my husband had thrown on the clutch, that I remember."

She further testified that she did not hear any gong sounded prior to the accident.

The husband testified substantially the same as the wife, except that he says:

"When I was about 25 feet from the track, as near as I can estimate,—that is my judgment that I was about 25 feet from the track, when I discovered the speed of this car. Then I put my foot on the clutch and told my wife to get on the brake, which she did, but it was too late. The interurban was then 30 or 40 feet north of me."

He further testifies that he did not discover the speed at which the car was coming until it was within 20 feet of the north line of Capitol Avenue. It was then he discovered for the first time that it would be impossible to cross in front of the car. "It was then I put my foot on the clutch and told my wife to put her foot on the brake. When I put my foot on the clutch, the speed of the car slackened to a certain extent. The speed of the car slackened when my wife put her foot on the brake, but it did not slacken fast enough. We were not going, at that time, to exceed 12 miles an hour. I know this because I had a speedometer right in front of me, and I watched it at the time. I put my foot on the clutch and my wife put her foot on the brake. The car slackened somewhat. Next, the interurban struck us. I took hold of the wheel just as the car was about to strike us. I turned the wheel so as to clear us of the track." He said that his best judgment was that his car could have been stopped in 20 or 30 feet. There were two brakes in the car, a foot brake and an emergency brake. The emergency brake was not applied.

There is other testimony as to the speed at which the interurban was moving, and other testimony as to the speed at which plaintiff was driving.   There is other testimony as to statements made by plaintiff immediately following the accident, tending to contradict his testimony herein set out, all of which is denied by plaintiff in rebuttal.   It is not our province to settle the controversy in the testimony.   If there is credible evidence sufficient to justify the verdict, we do not interfere. Under the record as made, we think that the court did not err in overruling defendant's motion for a directed verdict. Under the record, the jury might well have found that the plaintiff and his wife, acting as reasonably prudent persons, had reason to believe, and did believe, from their observations made at the time, that they had plenty of time to cross the track in safety.   As said in *Ward v. Marshalltown Light Co.,* 132 Iowa 578, a case quite similar in its facts to the one at bar:

"With respect to plaintiff's freedom from contributory negligence, the evidence tended to show that, at the curb line, before attempting to cross the street, he saw the car which caused the injury approaching him at a distance of about a block and a half; and, without further attention to the car, he proceeded to cross the street, and when he reached the defendant's track, twelve feet from the curb line, he was struck by the car; that the car was running at a speed of thirty miles an hour, whereas, under the provisions of the city ordinance, its speed should not have exceeded twelve miles per hour; and that the motorman gave no signal nor warning until his car was so close to plaintiff that he was unable to avoid a collision.   It requires no very elaborate mathematical calculation to show that, if the plaintiff saw the car approaching a block and a half away when he was at the curb line, he could have crossed the track in safety before it reached him if it had been going at a rate of speed not exceeding that fixed in the ordinance, while, on the other hand, he was likely to be injured, as he was, if the car was going at twice

that speed. Now, while it has been well said that one about
to cross a street car track should take precaution for his own
safety (*Bean v. Ry. Co.*, 104 Iowa 563; *Metz v. St. Paul City
R. Co.*, 88 Minn. 48), and should not rely upon nice calcula-
tion as to whether or not he can cross before a moving car
(citing authorities), yet if, under the circumstances as they
appear to him, he is justified in believing that he can cross
the track in safety, and he is in fact injured by reason of the
improper speed at which the car is operated, we can hardly
say that his recovery should be defeated by the fact that, if
he had looked at the very instant he came into immediate
proximity to the track, he might have discovered his danger
and avoided it. Under such circumstances, we think the ques-
tion of contributory negligence is properly left to the jury''
—citing authorities.

See *Adams v. Union Electric Co.*, 138 Iowa 487, in which
the authorities are again reviewed, and it is said:

''The jury might have found that the velocity of the car
was twenty-five or thirty miles an hour. The jury might also
have found that, while plaintiff knew it was coming, he was
not aware of its excessive speed, and, if so, in the exercise
of ordinary care, might have assumed that it was approaching
at a reasonable rate of speed.''

It is further said:

''If the driver observes a car on the line at such a dis-
tance that, in the exercise of ordinary prudence he believes
he can safely cross, and, in undertaking to do so, a collision
occurs, this cannot be attributed to negligence on his part,''
—citing authorities.

The mere fact that one observes a street car in the dis-
tance, as he approaches a public crossing on a street, does
not require him, arbitrarily, to stop his vehicle and wait for
its passage under all circumstances. His right to use the

highway for travel is a legal right which he may exercise, observing, however, that others have an equal right to the use of .it with himself. Neither is permitted to expose the. other unnecessarily to danger. As said in the *Adams Case:*

"If one were always chargeable with negligence for driving upon a track when an approaching car is in sight, there are many places which could never be crossed without fault. Pedestrians or drivers of teams have as much right to the street as the street car company, and are not required to desist from traveling over any part of it because of the running of cars thereon. All that is exacted is that reasonable prudence, with reference to their operation, be exercised by them to avoid injury, and when in so doing it can be said that they reasonably believed the crossing can be made in safety, they may go over it without laying themselves open to the charge of negligence," citing cases.

See also *Powers v. Des Moines City Ry. Co.,* 143 Iowa 427.

It is next contended that the court erred in making the record upon which the case was submitted to the jury. The first error assigned on this point is that the court erred in overruling defendant's objection to the introduction of the ordinance governing the rate of speed of street cars, and in overruling defendant's motion to withdraw the ordinance from the consideration of the jury. We think there is no error here upon which reversal can be predicated. At the time the ordinance was offered, the offer was made in these words: "Plaintiffs offer in evidence the first paragraph of Sec. 1313 of the Revised Ordinances of the city of Des Moines as identified, being the first paragraph of Sec. 3 of ordinance 492, and reads as follows:" Thereupon the ordinance was read to the jury. The proper foundation for the introduction of the ordinance was laid. The only objection made by the defendant was to the offer of the book as incompetent, irrelevant and immaterial. No

3. STREET RAILROADS: expiration of franchise: continued use of streets: ordinance limiting speed: validity.

objection was urged to the offer of the ordinance itself. The objection was overruled.

After the evidence had all been introduced, and after defendant had made a motion for a directed verdict, the defendant moved the court to withdraw from the consideration of the jury the ordinance offered in evidence, on the ground that stated portions of the ordinance were invalid and inoperative because the said ordinance and amendment thereto had been held by the Supreme Court of the state invalid and inoperative. Now while it is true that the Supreme Court, in *State ex rel. County Attorney et al. v. Des Moines City Ry. Co.,* 159 Iowa 259, held that the franchise had expired under which the Des Moines City Railway Company was operating its cars, there is no holding in that case that the provision of the ordinance regulating the speed of cars when operated was repealed. In that case, the court extended the privilege of operating the cars for two years longer. The two years had not expired at the time this trial was had. The speed provision of the ordinance had never been repealed, nor was it by this court held invalid. In fact, that question was not before this court for consideration at all in that case. We think that, while the company continued to operate its cars upon the streets of Des Moines under the privilege granted in the decree extending the time for two years, it was amenable to the ordinance of the city regulating the speed at which the cars should be run. Its rights were not enlarged any by the holding that the franchise under which it was operating had expired.

It is next contended that the court erred in permitting plaintiff and his wife to testify that they did not hear any warning as the car approached, and that no warning was given. This complaint rests upon the thought that the plaintiffs did not charge that as an element of negligence; therefore it was not a matter to be considered by the jury in determining whether or not the defendant was negligent. This is unquestionably true, and, if allowed for

4. NEGLIGENCE: evidence: inadmissibility to prove negligence not pleaded: when otherwise admissible.

that purpose,—for the purpose of showing negligence of the defendant,—it was clearly irrelevant to any issue; but the court, when ruling upon the objection and permitting the testimony, limited it. The court said: ''I will admit it, not' as bearing upon the question of any negligence on the part of the defendant, but as bearing upon the question of the negligence or want of negligence on the part of the other parties.'' The court was of the opinion that it might go to the jury as explaining the conduct of the parties driving the car, and, in its instructions to the jury, expressly so limited it, and said in its instruction:

''The court has permitted the plaintiff and his wife to testify, as witnesses in this case, in substance and to the effect that they did not hear warning given by the employees of defendant in charge of the car on defendant's track, as it approached Capitol Avenue. You will understand that this is not permitted by the court for the purpose of showing negligence on the part of the defendant, in any failure on its part to give warning of its approach to Capitol Avenue, but is permitted to go to the jury for the jury's consideration, with the other evidence offered on the trial, as bearing upon the question of whether or not the plaintiff and his wife were guilty of negligence, on their part, in driving the automobile upon defendant's track in front of said car.''

The court also told them that they might consider this only as bearing upon the conduct of the plaintiff and his wife as they approached the track. As thus limited, we think there was no reversible error in its admission.

The next error is predicated upon the action of the court in sustaining an objection to certain testimony drawn out by the defendant on the cross-examination of Mrs. Flannery. Mrs. Flannery had testified as follows:

5. EVIDENCE: conclusions: exclusion.

''At the time my husband got hold of the wheel, he says, 'My God, it is going to strike the children.' Q. He saw

apparently that you could not control the car? A. That I
could not control the car? (Objected to as incompetent, ir-
relevant and immaterial, and based upon an assumption of
fact not warranted by the testimony. Sustained by the
court.)''

It will be noticed that the witness was not asked whether
she could control the car or not, but she was asked whether
her husband *apparently saw* that she could not control the
car, clearly calling for the conclusion of the witness as to
what the husband apparently saw, and not for the fact as to
whether she could control the car or not. The ruling is so
clearly right that we will not follow the discussion.

6. EVIDENCE:
negligence:
"belief" as to
absence of
danger:
competency.

It is next contended that the court erred
in not sustaining defendant's objection to the
testimony of the plaintiff Flannery bearing
on his conduct just prior to the collision.
This testimony is as follows:

''Q. What did you do after you observed the interurban
car? A. Well I really didn't do anything at that time be-
cause I didn't think there was any necessity for it.''

Defendant moved to strike out all the answer after the
word ''because,'' as a conclusion of the witness and incompe-
tent. The court, in overruling the motion, said:

''Of course, the ultimate thing is for the jury, but it
occurred to me that the matter that presented itself to his
mind might be proper.

''Q. Why did you not do anything at the time, Mr. Flan-
nery? (Objected to as before and overruled.) A. Because I
did not think there was any danger. Q. Why didn't you
think there was any danger? (Same objection and ruling.)
A. Because I thought I had plenty of time to get across the
track.'' (Motion to strike the answer out.)

The court remarked: "This simply comes to the question as to whether or not the plaintiffs purposely and knowingly went on there. There is a difference between recklessness and negligence."

Whether the plaintiff and his wife had a right to believe that they could cross in safety was a question for the jury's determination, but what they did in fact believe was a question that they alone could testify to. There were two questions: What were the conditions that attended them at the time? What would a reasonably prudent and cautious person conclude as to the expediency of attempting to cross? There was then the further consideration: Did these parties, at the time, in fact believe that they could cross in safety? That they believed they could cross in safety might rest on a reckless and foolish conclusion. Under the circumstances as presented, a reasonably prudent man might believe that they could cross in safety; yet if the plaintiff, under the circumstances and conditions known to him, knew that they could not cross in safety, it cannot be said that he was deceived by appearances. The question for the jury was: What were the conditions there? What conclusion would a reasonably prudent man come to under the conditions? And what conclusions did these parties come to that controlled their actions? We think there is no error here.

We find no reversible error in the case and the cause is—
*Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.