MATILDA SANDELL, Appellee, v. DES MOINES CITY RAILWAY
COMPANY, Appellant.

**NEGLIGENCE:** Proximate Cause—Failure to Maintain Lookout.
1  Failure to maintain a lookout ahead of a street car is not the
proximate cause of an injury suffered by being hit by the car,
when such lookout, had it been maintained, would not, *because
of plaintiff's negligence*, have avoided the injury.

**NEGLIGENCE:** Acts Constituting—Non-Anticipated Dangers. A
2  motorneer on a street car may rightly assume, until some pre-
liminary warning or indication to the contrary is given, that
one traveling parallel with and ahead of his car will not sud-
denly turn across the track.

**JUDGMENT:** Conclusiveness—Identity of Facts—Stare Decisis. No
3  decision of a fact question in one case is *stare decisis* unless
there be competent evidence, duly incorporated in the record,
that the facts in such case are identical with the facts in the
case wherein the application of the doctrine is sought.

**NEGLIGENCE:** Acts Constituting—Absence of Warning Signals.
4  Negligence may not be predicated on the absence of warning
signals of the presence and movements of that which ultimately
caused an injury,—e. g., a street car,—when, at a time when
there was no danger, the injured party had ample knowledge of
the presence of such thing, and of what it was then doing and
what it was liable to do in the immediate future.

**NEGLIGENCE:** Contributory Negligence—Lookout for Street Cars.
5  One who is driving parallel with, and ahead of, a street car, but
in close proximity thereto, and knows that said car has made a
temporary stop, and is liable at any moment to proceed in his
direction, is guilty of negligence in suddenly and without warn-
ing turning across the tracks and in front of the street car,
without looking and ascertaining the position of the latter, and
without signal from the traffic officer so to turn.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

JULY 1, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

PLAINTIFF has verdict and judgment on a claim that the defendant injured her by the negligent operation of one of its cars. Defendant appeals.—*Reversed*.

*Parker, Parrish & Miller*, and *A. G. Rippey*, for appellant.

*Stipp, Perry & Starzinger*, for appellee.

SALINGER, J.—I. Upon analysis, the petition is found to charge the following negligences:

a. Running and operating the car at a public street crossing in the business section of the city at an excessive and high and dangerous rate of speed.

b. Proceeding east before plaintiff was clear of the track, without first having a signal from the traffic policeman to proceed east.

c. Failing to observe the track and street ahead of the car.

d. Failing to maintain a lookout in advance of the car, so as to enable the defendant to see that the rear of plaintiff's buggy was not yet clear of the track, in time to stop and avoid the collision.

e. Operating the car without having such control over the same as that it could be stopped before it reached and struck the plaintiff's buggy.

f. Failing to ring a bell or give any other warning of the advance of the car.

g. Running the car in such a reckless and wanton manner as to run the same into the rear of the buggy, when same was in plain sight and not yet clear of the tracks.

The defendant, in various ways, asked the court to hold that, as a matter of law, there was no evidence of any actionable negligence, and to hold, as matter of law, that the plaintiff was guilty of contributory negligence. We have to determine whether the court erred in refusing so to hold.

II.   Was there any evidence upon which a jury might, in reason, say that the car was being operated at an excessive and high and dangerous rate of speed?   The undisputed testimony is that the car made a stop at or near the west line of Fourth Street, a junction point, and for the purpose of arranging the switch so that the car might proceed eastward on Locust Street across Fourth Street.   It is shown without dispute that it started eastward on signal from a traffic officer; that it started slowly, and at no time went faster than the ordinary walk of a man, say 3 or 4 miles an hour.   While it was thus proceeding slowly, the traffic officer, observing that the plaintiff was turning north across the track, gave the motorman a signal to slow up. He did so immediately, and, at the outside, did not run more than 15 feet after this last signal was given.   The car was so well under control and ran so slowly that, after colliding, the car moved very little indeed, say some 2 or 3 feet.   The occupants of the buggy suffered no injury that indicates that there was a violent collision.   It is admitted the horse was hurt very little.   As to the buggy, neither spokes nor shafts were broken; and, though it was turned over, it was not damaged except in the two bows in the top. The turning over was caused by the fender of the car's striking the front wheel of the buggy.   As some of the witnesses put it, the hind wheel ran up over the fender, and this turned the rig over.   Others say the hind wheel went over the fender and raised the buggy, and didn't at first even turn it over; and still another witness puts it that the car just naturally rolled the buggy over the fender, and upset the buggy.   There is no evidence of improper speed.

2-a

It is charged there was negligence in starting the car at all, at the time it started.   The argument is that there

should have been no start, until the traffic officer gave a signal to start. The inferential argument is that the car started without signal. The answer is that the start was made upon such signal.

### 2-b

The next negligence asserted seems to be a claim that, if defendant had looked ahead properly, it could have seen the situation of plaintiff in time to avoid the collision. The buggy had gone east on signal. For some 40 feet, it kept on going east. During that time, the most careful looking ahead would have disclosed nothing that required a change in the movement of the car. Looking ahead on the track would not have disclosed that the driver, who had started east on signal, and was going east, would, without signal or any advance indication, turn north across the track. The only definite evidence upon the point is that, when the plaintiff turned, the car was not more than the length of a horse away. We are unable to see how failure to look ahead on the track can be deemed the proximate cause of the collision. Though the eyes of the motorman were on the track ahead every instant, it would not avoid the collision if no sign of the possibility of collision could be seen. If there be negligence, it is not failure to maintain an advance lookout, but failure to act properly on something that could be seen. If negligence of plaintiff made useless the most careful watching of the track ahead, failure to watch has no causative relation to the injury suffered.

1. NEGLIGENCE: proximate cause: failure to maintain lookout.

### 2-c

What is there upon which a finding might rest that, if the car had been kept in proper control, it could have been stopped before colliding? It was going at the rate of 3 to

4 miles an hour.  When it was signaled to

2. NEGLIGENCE:
acts consti-
tuting: non-
anticipated
dangers.

stop or slow up, it was the length of a horse from the buggy.  It was slowed down to such a degree that, after going this short distance, it practically did not injure the buggy that it struck, and moved less than 3 feet after striking it.  The evidence establishes that the rails were damp, and that this increases the difficulty of stopping.  That, in such conditions, the car was brought to a practical standstill, adds to the proof that there was all control in reason to be expected, if operating the cars at all was not to be practically abandoned.  At this point, the real question is not whether there was failure to have control, but whether the motorman was negligent in not anticipating that one who had gone east on signal would turn without signal, and without any indication of a purpose to turn.

In *Louisville R. Co. v. Wehner*, 153 Ky. 190 (154 S. W. 1087), it is held that a street railway company is not liable for injury by running into an automobile, where no accident might have occurred if the automobile had kept going on instead of stopping, though it did this stopping at a signal from a policeman.  One in charge of a street car has the right to presume that one walking along the side of the track will, in the exercise of ordinary prudence, not attempt to cross the track immediately in front of the car until he gives reasonable ground for concluding that he may so cross.  *Beem v. Tama & T. E. R. & L. Co.*, 104 Iowa 563.  A motorman who sees a wagon approaching the track in front of his car has the right to presume the driver will use his senses in looking out for the car.  *Markowitz v. Metropolitan St. R. Co.*, 186 Mo. 350 (85 S. W. 351).  A motorman is entitled to presume that one traveling on a street will remain on that part of it which is not occupied by the railway, and may so presume until such person shows by his actions that he is going to attempt a crossing.  And if

the traveler, without looking to see whether a car is approaching, turns onto the track so suddenly that it is impossible to check the car in time to prevent an accident, the railway is not responsible for the consequences. *Birmingham R. L. & P. Co. v. Clarke*, 148 Ala. 673 (41 So. 829). The case holds a charge should have been given that the motor-. man was entitled to presume that intestate would remain on the right side of the street, until he gave some outward indication that he was going to cross to the left-hand side. .

If any negligence caused the injury of the plaintiff, it was not negligent lack of control.

If the flagman signals the motorman to proceed, when it is dangerous to do so, the negligence is that of the city, and not of the street railway company. *Baltimore Consol. R. Co. v. State, Use of O'Dea*, 91 Md. 506 (46 Atl. 1000). In *Mobile L. & R. Co. v. Burch*, 12 Ala. App. 421 (68 So. 509), the holding is that, if a street car motorman does not see a traffic officer who is on or near the track, he is negligent for failing to discover him. It has some bearing, then, on the ultimate question we have, that the motorman did not start until the traffic officer gave him a signal to do so.

III. It is charged there was negligence in failing to ring a bell, or give any other warning of the advance of the car. This suggests some reinforcements for the positions already advanced in this opinion. The plaintiff knew the functions of a traffic policeman, and recognized the importance of being controlled by his signals. It is, of course, insisted that she was guilty of no negligence in turning north without receiving signal to do so. · That means that, while plaintiff is not negligent though she attaches no importance to warning by a signal from the traffic policeman, anyone who fails to give her warning, is negligent. As an amplification of the complaint that here it was negligent not to ring a bell or give other warning of the advance of the car, we are told in argument that plaintiff was paying attention to

warning signals, but the motorman failed to give her warning, or, at least, a timely warning.    This would seem to claim that a warning by a motorman is a vital matter, but warning from a traffic policeman is not.

Passing all this, we reach a question that may as well be disposed of here as anywhere.    There was a companion suit on part of the lady who was riding in the buggy with plaintiff, and a judgment for her has been affirmed in this court.    In the decision, it is held there was a conflict on whether any warning by ringing of bell or otherwise was given.    We cannot and do not undertake to review this decision.    But does it follow that it is *stare decisis?*    For self-evident reasons, no decision of a fact question is *stare decisis,* unless there be competent evidence that the facts in the two cases are identical.    The evidence in the one case must, in some proper manner, be exhibited in the second, in order that the first shall conclude the court.    See *Sloanaker v. Howerton,* 182 Iowa 487; *Enix v. Miller,* 54 Iowa 551, 553; *State v. Saling,* 177 Iowa 552.    That has not been done; and moreover, the opinion discloses material testimony not found in the record of the present case.    We must determine this fact question and every other upon the record presented in the case before us.    In that record, the testimony that warning by bell was given is numerous and positive, and is opposed by nothing but testimony that persons who confess either to having been distracted or to having paid little attention did not hear such warning.    In said companion case, the case of *Hoffard v. Illinois Cent. R. Co.,* 138 Iowa 543, at 548, is not mentioned, and no case is cited on this point.    An examination of the testimony disclosed in the opinion in the *Hoffard* case will persuade any reasonable mind that, in the *Hoffard* case, there was a much stronger conflict than anyone will claim exists in this case.

**3. JUDGMENT:** conclusiveness: identity of facts: *stare decisis.*

But the *Hoffard* case holds that whether warning was given
was properly not submitted to the jury.

### 3-a

Of course, it may constitute negligence to operate a
street car without giving warning by bell and the like. *Mo-
bile L. & R. Co. v. Burch*, 12 Ala. App. 421 (68 So. 509).

**4. Negligence: acts constituting: absence of warning signals.** But if we assume there *was* a conflict on
whether such warning was given, and that,
ordinarily, there is a duty to give it, it still
remains true that there is no duty to warn
of that which is already known. *Sidwell v.
Economy Coal Co.*, 154 Iowa 475. If the plaintiff knew all
of which a warning could have informed her, she may not
complain that none was given. *Flannery v. Interurban R.
Co.*, 171 Iowa 238, citing the *Sidwell* case, 154 Iowa 475.
Did she have such knowledge? She passed this car while
both were going east. She knew that it stopped at the west
line of Fourth Street; that it would make but a temporary
stop. Every moment she was traveling east, she knew, or
should have known, the car would, or at least might, come
east at any moment. She had gone east on signal, and knew
the same signal might be given to the car operatives. She
turned across the track at a point where she must have
known the car might strike her if it went on its way, as she
knew it would, or might. Had she known no more than
that, as a general practice, some car might be coming east
as she was turning north, it would still have been her duty
to look and listen before turning across the track. Surely,
she was not relieved from this duty because she knew, not
only that, on general principles, some car might collide with
her, but knew that she had left a car standing tempo-
rarily at a point not more than 40 feet from the point where
she was turning. Now, while one who is about to cross a
street railway track is not bound to look and listen as in

crossing a railway track, still the traveler is required to do such looking and listening as will constitute ordinary care against injury by street cars. *McCormick v. Ottumwa R. & L. Co.,* 146 Iowa 119; *Flannery v. Interurban R. Co.,* 171 Iowa 238. So it has been held that, where neither the plaintiff nor the driver looked for a street car before they started across the track, judgment for the plaintiff could not stand, even though defendant was negligent. *Dummer v. Milwaukee E. R. & L. Co.,* 108 Wis. 589 (84 N. W. 853).

We think it settled there might be a duty to look and listen, where one does *not* know that a car is actually back of him a short distance, and likely to come at any moment where it may cause a collision; that there

5. NEGLIGENCE: contributory negligence: lookout for street cars.

may be contributory negligence, as a matter of law, for failure to make an investigation as to whether cars that might be on the way are coming. See *Artz v. Chicago, R. I. & P. R. Co.,* 34 Iowa 153; *McCormick v. Ottumwa R. & L. Co.,* 146 Iowa 119. In *Underwood v. Oskaloosa T. & L. Co.,* 157 Iowa 352, the street car could be found to be running at 7 or 8 miles an hour; it could be found that plaintiff had his own car under control. The collision was with a street car coming from the west, and it occurred because plaintiff failed to observe the car, which he did because his attention was directed in another direction. And it was held that plaintiff was conclusively negligent in approaching the crossing. In *Hilts v. Foote,* 125 Mich. 241 (84 N. W. 139), the essence is that plaintiff could have seen a street car at an intersection much earlier than he did. He did see it first when he was between 45 and 50 feet from the intersection. Thinking it impossible to stop his horse before the car would strike him, he struck his horse, and tried to cross the track, and was struck; and it was held verdict should have been directed for his contributory negligence.

If this be the law where plaintiff merely could, with

care, have ascertained that a car was to be guarded against, surely that is the law where she not only might have known, but did know. And it should not be overlooked that the companion of plaintiff testifies, as a witness for her, that she "saw it coming and heard it all right." Plaintiff should have looked and listened, to ascertain what the car known by her to be back of her was doing. What did she do? What was the situation?

## 3-b

The top of the buggy was up. One argument for the claim that plaintiff did not see the traffic policeman signal the motorman to go east is that she was traveling "in a covered buggy." The side curtains were down; and this, with the top up, disenabled her to see anything coming from behind, unless she put her head out past the curtains, which were down on the sides. Owing to the position of the seat, she would be obliged to stop and "lean way out," to get a view of anything from behind, unless she looked into a glass which she had, and which she did not look into. A disinterested eyewitness says that, at no time during the time in inquiry, did he see anyone stick a head out of the buggy. There is some confusion in the testimony of the plaintiff herself as to her looking, and at one place in it, she seems to say that she did look before turning north, to see if she had a clear way to turn; and that, at that very time, the car was still standing on the west line of Fourth Street. It is undisputed that the horse was across the track before the collision occurred. Even if the car started on that instant, it could not have collided, unless, at 4 miles an hour, it could go at least 40 feet in less than the time required to pull the buggy across the track. This is, of course, a physical impossibility; and it is but fair to say that the positive testimony of plaintiff and her companion make it very clear that, if the plaintiff looked at all, it was at the time when

the car was no longer standing still. If that be the time, she looked at no time after the car started until she began to turn; because she says she did not look out "any to see where the car was until I commenced to turn." We are of opinion that such looking and listening as all this shows fell short of ordinary care.

### 3-c

We are told that, though the plaintiff had gone east on a signal, this did not oblige her to keep on going east indefinitely. That is so, of course. But is that any justification for what the plaintiff did, or failed to do? Though she was not under obligation to continue eastward, she had started in that direction on permission by signal. Though not obliged to go on in the direction in which she had been permitted to go, the fact that she was traveling east on permission by signal would seem to require that she should not, suddenly and without indicating a purpose to do so, change her direction—at least not until a second signal permitted her to turn from the east to the north, across the track on which she knew there was a car sure to go eastward, and sure to collide with her if she was crossing the track to the north when the car reached her on the west. It is conclusively shown that, without any disclosure of an intention to change her course, she made a sharp turn across the track on which she must have known this car would come toward her at some time, and might collide with her unless she cleared the track before the car reached her. On the same reasoning that justifies the defendant in going east on signal to do so, it was not negligent for the car to keep going east until the plaintiff gave some outward indication that she was going to cross. And on the same reasoning, the failure to give that indication constitutes negligence. *Birmingham R. L. & P. Co. v. Clarke,* 148 Ala. 673 (41 So. 829).

It is significant that one charge of negligence in the pe-

tition is running the car across Fourth Street when plaintiff was not yet clear of the track, before receiving a signal from the traffic policeman to proceed. Now, if it was negligence for the car to proceed east until the traffic policeman signaled it to do so (which signal, by the way, was given), it certainly was negligence for the plaintiff to go north after having been signaled to go east, without waiting for a signal to go north.

### 3-d

It is, in effect, argued for the appellee that the intersection of Fourth and Locust Streets is one of the principal thoroughfares between east and west Des Moines; that the streets at this point are used a good deal; that lots of teams and automobiles and street cars are constantly going back and forth over this intersection; in a word, that a driver might be distracted. While this may usually have been a very busy thoroughfare, as stated, the testimony of White, which is not disputed, shows that, at the time of the collision, there were no rigs or vehicles about, and nothing to distract the attention of the plaintiff. And the argument is two-edged. The plaintiff was familiar with all that her counsel urges in her behalf. If a rush of business at the point, or other things usually there, furnish an argument for avoiding contributory negligence, it must be borne in mind that one who knows the conditions are what appellee now says they are, was thereby bound to greater care, and, to say the least, to be guided by signals from the traffic officer. This court has properly said, in the companion case, that, where the crossing is greatly frequented, and travel and traffic tend to congestion, and where promptness and activity, if not haste, are required, it is not always easy to say whether all the parties have observed their reciprocal duties. Assume that there was such a condition about this intersection, and the same reasoning which demonstrates

that these conditions may make the carrying out of reciprocal duties doubtful, demonstrates that it is negligent not to avail oneself of adequate means provided to meet the difficulty in question.

IV.   The claim that the collision was wantonly caused, in effect an invoking of the doctrine of the last clear chance, has no support in the evidence.   This has been quite fully shown by what we have already said.   In addition, it is undisputed that the rails were wet, and that the stop was made as soon as possible after there was any notice of plaintiff's position and peril.

The whole case is fairly ruled by the recent case of *Livingstone v. Dole* (December 14, 1918), wherein the following able summary is found:   That the driver of vehicles is required to keep a lookout at all times at such localities does not exempt pedestrians from making reasonable use of their senses in passing over.   Each has an equal right to the use of the streets.   "One has no rights superior to the other, save as declared by statute or ordinance, and each is obliged to act with due regard to the movements of others entitled to be on the street.   Neither is called upon to anticipate negligence on the part of the other.   It is no more the duty of the driver of vehicles to continually look out for pedestrians than the latter to look out for vehicles.   No pedestrian has a right to pass over a public thoroughfare without regard to approaching vehicles, nor has any vehicle driver a right to appropriate the public street, without regard to its use by pedestrians."

Other matters presented need no consideration, in view of the points determined.

We are constrained to hold that a verdict should have been directed for defendant, and that, therefore, the cause must be—*Reversed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.