W. C. STEEN, Appellee, v. JOSEPH L. HUNT et al., Appellants.

No. 46332.

NOVEMBER 16, 1943.

Shaw & Shaw, of Pocahontas, and Putnam, Putnam, Fillmore & Putnam, of Des Moines, for appellants.

Gilchrist & Gilchrist, of Laurens, and A. C. Carmichael, of Pocahontas, for appellee.

WENNERSTRUM, J.—Plaintiff's action is for property damage to his automobile, and also for personal injuries sustained by him, as the result of a collision between a truck operated by one of the defendants and plaintiff's automobile. Plaintiff claims that the defendant driver ran into the rear of his automobile. The defendants denied any liability for the accident. Upon the trial of the case the jury returned a verdict for the plaintiff. The defendants' motion for a new trial and exceptions to instructions were overruled. They have appealed.

Highway No. 17, a paved road, runs north and south through Pocahontas county. The place of the accident involved in this litigation was at a point about a mile east of the town of Havelock where the paved highway intersects a gravel road running east and west. A ballroom is located on the west side of Highway No. 17, to the south and west of the intersection to which reference has heretofore been made. There is an oil station to the north of the ballroom on the southwest corner of the intersection, and there is another oil station on the northwest corner of this intersection. The two oil stations are about 200 feet apart.

There had been a previous accident earlier during the night of August 16, 1941, in which the appellant, John Hunt, Jr. had been involved. This first accident occurred about a mile and a half south of the two-oil-stations intersection. In this accident the Hunt car had in some manner got into the ditch adjacent to the highway. Following this accident, Hunt had proceeded to the oil-station corner and there sought the assistance of the appellee in getting his car out of the ditch. He then went to the town of Mallard, where he obtained his father's cream truck, and thereafter returned to the corner where the oil stations are located. The appellant drove the cream truck to the location of the first accident and the appellee, accompanied by an attendant at the north oil station, followed in his car. The location of the car and condition of the ground made it impossible for these persons to get the Hunt automobile out on the road. The evidence discloses that at the time of the first accident John Hunt, Jr. had lost his glasses. The parties then left this point, the appellee proceeding ahead north, and John Hunt, Jr., in the cream truck, followed. The appellee testified that before leaving the point where the Hunt car was in the ditch he stated to the appellant that ''we would go back to the north oil station'' where he would then make out a report of the accident. Appellee further stated that John Hunt, Jr. said ''all right.'' The evidence shows that the appellee is a constable and that he was employed at the ballroom as a peace officer on the date of the accident which resulted in this litigation. This last accident occurred in the early morning of August 17, 1941.

The appellee's version of the accident may be briefly summarized as follows:

He was driving on the right side of the paved highway, on the east side of the pavement and east of the black line. He stated he was struck by a truck driven by John Hunt, Jr. as he was traveling about ten or twelve miles an hour and when he was about opposite the south filling station and the ballroom. He testified that the cream truck driven by John Hunt, Jr. struck his car and that the right front fender and the right corner of the box on the Hunt truck struck the left rear corner of his car. He further testified that prior to the time of the collision the appellee had slowed down preparing for a turn into the north

filling station. The appellee testified that before slowing down he was driving about thirty miles an hour and that Hunt was driving about forty miles an hour. Appellee further states that at the time of the collision and impact he was jerked back and his head struck against the back and sill of the window and his head was injured. He further testified that the occupant of the car with him was thrown back in the rear of the car. He stated that after the collision and impact his car went approximately 187 feet down the road while it was still on the highway and the pavement and then skidded to the northwest and went into the ditch on the west side of the road. He also further testified that the truck proceeded north after the impact and went into the ditch on the west side of the paving at a point north of where the appellee's car stopped. The appellee testified that John Hunt, Jr. stated after the accident, ''I thought you had stopped,'' and also stated, ''I couldn't see very good, I lost my glasses down at the dredge ditch at the other accident.''

On cross-examination the appellee testified:

''I didn't make the signal with my hand for a turn at the time of the impact.''

He also stated that at the time his car was struck he ''was not about to make a left turn'' and ''at the time of the impact I was driving north.''

The appellant John Hunt, Jr. gave a different version of the accident than that given by the appellee. He testified that the appellee did not say to him that ''we would meet at the D-X station to make out a report.'' The appellant John Hunt, Jr. testified that the appellee said that he would make out a report of the accident. He further testified that on leaving the scene of the first accident he, the appellant, proceeded toward his home (which would be toward the north), that he gained on the car, the light of which showed ahead, and that he was behind that car as it approached the intersection at the ballroom corner. He stated the appellee's car passed the intersection, then slowed down and its red stop light and taillight came on. As it slowed down he testified he was about 100 yards behind it. He then proceeded to pass the car as it was almost stopped still on the right-hand side of the road, and as he attempted to pull around

this car it suddenly turned over to the left-hand side of the road without any warning or any hand signal. He further stated that he pulled his truck on around to the left to avoid hitting it, if possible, but that the collision took place west of the center of the highway and opposite the north drive of the north oil station. He further stated that the way the cars came together was that they both turned to the left and it was a sideswipe. Appellant Hunt, Jr. denied that he struck appellee's car opposite the south oil station and said he did not cause it to go 187 feet north from the point of the collision. It is thus apparent from the testimony of these two men that there is a pronounced difference between them as to where and how the accident occurred.

The facts as heretofore set forth substantially describe the two versions of the accident. The appellants assert that certain errors were committed by the trial court in its instructions and that by reason of the fact that the court overruled appellants' motion for a new trial and exceptions to instructions there should be a reversal in this case. We shall hereafter give consideration to certain of the alleged errors of which appellants make complaint.

I. One of the grounds of reversal upon which appellants place a great deal of stress is the claimed error in the giving of the court's Instruction No. 19. This is a long instruction, the first part of which sets out in substance the law pertaining to the statutes (sections 5025.04, 5025.05, 5025.07, 1939 Code of Iowa) in regard to the signal required in making a left-hand turn. The appellants' attorneys submitted a requested instruction pertaining to the prior-referred-to sections, which requested instruction was to the effect that, if the jury found that the appellee had not given the statutory signal, the appellee would be guilty of contributory negligence. In connection with the complaint made relative to the giving of Instruction No. 19, the appellants complain of the manner in which the law set forth in the Code sections in question is commented upon in this instruction and claim error because of the fact that the court did not incorporate the substance of the requested instruction. In the latter part of Instruction No. 19, the court instructed the jury that it was contended by the appellee that he and the appel-

lant John Hunt, Jr. had made an arrangement at the scene of the first accident to proceed to the north oil station. The jury was further instructed that this claimed arrangement to meet was disputed in the evidence by the appellant John Hunt, Jr. The instruction was to the further effect that if the jury found from the preponderance of the evidence that the appellee had established such an arrangement with John Hunt, Jr., and that the appellant John Hunt, Jr. knew that the car ahead of him was the car of the appellee, ''then you are instructed that the defendant John Hunt, Jr., had knowledge of the fact, if you find it to be a fact, that the plaintiff would make a left-hand turn at the said north D-X oil station and the defendant, John Hunt, Jr., would have knowledge of the very thing that a left-hand signal by the plaintiff, if given, would tend to impart, and the plaintiff would not be guilty of contributory negligence in this respect.'' The instruction further proceeded to advise the jury as to their duty if they failed to find that the appellee had established by a preponderance of the evidence that such an arrangement was made. The question is therefore presented as to whether or not there was error in the giving of this particular instruction.

It will be observed from the portion of the instruction quoted that the court left it to the jury to decide the fact question whether arrangements had been made to meet at the north oil station, and as to the fact that the appellant John Hunt, Jr. knew that the car ahead of him was the appellee's car. The instruction then states that if these facts are proved, then the appellant John Hunt, Jr. had knowledge that the appellee would make a left-hand turn. In connection with a situation somewhat similar to the one here presented, we stated, in the case of Ryan v. Trenkle, 203 Iowa 443, 445, 446, 212 N. W. 888, 890, as follows:

''A person who has knowledge of the presence of a train or auto, which imparts to him the very thing that a signal was intended to impart, cannot, under ordinary circumstances, predicate negligence on the failure to give a signal.''

In the case of Sandell v. Des Moines City Ry. Co., 184 Iowa 525, 532, 168 N. W. 226, 229, we also said:

"If the plaintiff knew all of which a warning could have informed her, she may not complain that none was given."

The cases of Engle v. Nelson, 220 Iowa 771, 777, 263 N. W. 505, and Elliott v. Des Moines Ry. Co., 223 Iowa 46, 50, 271 N. W. 506, comment further on the matter of negligence when the complaining party has knowledge of all the facts which a signal would have given. The portion of the instruction which has heretofore been quoted left it to the jury to decide whether the appellant John Hunt, Jr. had knowledge which would have relieved the appellee of the necessity of giving the statutory signal. It is our conclusion that the latter part correctly states the law applicable to the fact question involved.

However, in the first portion of the instruction, wherein the court set out the statutory requirements as to the giving of a signal when a vehicle is to be turned left when on a highway, it is not there stated that the failure to give the required signal, unexplained by any circumstances or previous arrangements, would constitute contributory negligence. In the latter portion of the instruction the court did state:

"If, however, you find that the plaintiff has failed to establish by a preponderance of the evidence that such an arrangement was made, then if you find that the plaintiff did turn his automobile from a direct course on the highway to the left at the time of the collision in question, then the plaintiff would be guilty of contributory negligence and he cannot recover anything against the defendants * * *."

The instruction might have been given in more detailed form but we have reached the conclusion that all the factors involved in this factual situation were properly commented and instructed upon.

II. The appellants also complain of the fact that the court failed to give requested Instruction No. 4 or an equivalent thereof. This requested instruction, in part, states that:

"* * * even though you find the defendants guilty of negligence as elsewhere defined and that such negligence proximately caused said collision still if thereafter the plaintiff failed to do that which an ordinary careful and prudent person

would have done under the circumstances to protect himself from injury, then the plaintiff would be guilty of negligence and if such negligence contributed to the upset and plaintiff's injuries, if any, to any degree, the plaintiff cannot recover.''

It is appellants' contention that after the collision or impact it was appellee's duty to do that which an ordinarily careful and prudent person would have done under the circumstances to protect himself from injury, and if he failed to do so and this failure contributed to the appellee's injuries he could not recover. Appellants contend that after the collision the appellee failed to do anything to prevent his car from going into the ditch on the left side of the road and because of this neglect he was guilty of contributory negligence. We have examined carefully the court's instruction relative to contributory negligence. We are convinced that the instructions given by the court on this feature of the case cover this point in substance in the manner requested by appellants. We find no error.

III. The appellants assert that the court committed error in submitting as a ground of negligence the failure of John Hunt, Jr. to wear eyeglasses when he had knowledge that his vision was defective. It is contended that there is no support in the evidence for the submission of this claimed ground of negligence. It would be error, of course, to submit an allegation of negligence that does not have support in the evidence, but we do not believe that is the situation in regard to the issue and instruction as to this appellant's defective eyesight. John Hunt, Jr. testified:

''My vision is defective without wearing eye glasses * * * My vision was impaired some without my glasses. I looked for my glasses that night * * * I am far-sighted. I can see objects close to me, but can't see away without objects becoming blurred. * * * I could see cars on the highway where the road intersections were and I could see my way from the D-X station down to the drainage ditch * * *.''

We are satisfied that there was ample evidence to submit this issue to the jury. We find no error in doing so.

46

Upon a review of the entire record we are convinced that the case was properly submitted to the jury and that the trial court should be affirmed.—Affirmed.

All JUSTICES concur.