ELIZABETH MITCHELL, Administratrix, Appellee, v. MYSTIC
COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Over-
1, 6 coming Presumption. Proof (1) that an injured person was in
the employ of a master who had rejected the Workmen's Com-
pensation Act, and (2) that his injury arose "out of" and "in
the course of" the employment, *ipso facto* brings to the aid of
the injured employee the statutory presumption that the injury
was proximately caused by *some* negligence of the employer.
Evidence of the care exercised by the master in carrying on
his work must be very comprehensive, before it may be said
*per se* that the said presumption is overcome. (Sec. 2477-m,
Code Supp., 1913.)

**NEW TRIAL:** Misconduct of Counsel. Explicit direction by the
2 court to the jury to disregard erroneous conduct by counsel will
ordinarily justify the court in denying a new trial on the
ground of such misconduct.

**NEW TRIAL:** Presence of Relatives of Deceased. The fact that
3 relatives are present on the trial of an action for damages for
negligently causing the death of deceased, and that sympathetic
appeal is made in connection with such relatives, is not ground
for new trial.

**MASTER AND SERVANT:** Scope of Employment. The fact that
4. an injured employee may have been, at a time prior to the in-
jury, a foreman or vice-principal, is quite immaterial when, at
the time of the injury, he was acting under the master's orders,
as a common laborer.

**TRIAL:** Cautionary Instructions—Non-indulgence in Sympathy. In-
5 structions cautioning the jury against being swayed by sym-
pathy are properly refused.

**TRIAL:** Excessive Verdict. Record reviewed, and *held* that a
7 verdict for $3,500 for negligently causing the death of a miner
was not excessive.

*Appeal from Appanoose District Court.*—C. W. VERMILION,
Judge.

OCTOBER 19, 1920.

ACTION at law, to recover damages occasioned by the death of Willard White, while in the service of the defendant coal company. Trial to a jury. Verdict and judgment' for the plaintiff, and defendant appeals.—*Affirmed.*

*Howell, Elgin & Howell,* for appellant.

*John Clarkson* and *H. E. Valentine,* for appellee.

WEAVER, C. J.—On April 11, 1918, the defendant company was engaged in operating a coal mine in Appanoose County, Iowa, and, in carrying on the work of said mine,

1. MASTER AND SERVANT: Workmen's Compensation Act: overcoming presumption.

it employed the services of the plaintiff's intestate, Willard White. On the day named, White, in obedience to the appellant's directions, was engaged, with others, in cleaning out dirt and rubbish which had collected in one of the mine entries through which coal was being removed, and, while he was so at work, a large rock from or near the junction of the side wall and the roof of the entry fell upon him, killing him instantly. Prior to this accident, the company had given notice, as provided by law, of its rejection of the terms of the Workmen's Compensation Act.

The plaintiff, as administratrix of the estate of the deceased, brings this action at law, to recover the damages occasioned by his death.

The defendant answers by denial of the allegations of the petition, and pleads affirmatively that the death of White was the result of the dangers and perils naturally incident to the work in which he was employed, and not in any degree to neglect or want of due care on its part. The answer also pleads affirmatively that the injury and death of deceased were due to his own negligence.

There was a jury trial, and verdict and judgment in plaintiff's favor for $3,500. Defendant appeals.

I. Counsel for appellant first deny the sufficiency of the evidence to justify a recovery of damages, asserting that "there is not a scintilla of competent evidence to support the verdict." But the zeal of counsel leads them to overlook or forget that the record shows, without dispute, the employment of deceased in the company's mine, and his "personal injury sustained, arising out of and in the course of his employment," and that our statute expressly provides that, under such circumstances, "it shall be presumed that the injury to the employee was the direct result and growing out of the negligence of the employer; and that such negligence was the proximate cause of the injury; and in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence." Section 2477-m, Code Supplement, 1913.

Under this statute, to sustain her right to a recovery, plaintiff was not required to allege or prove specific acts or omissions of a negligent character by the appellant. See, on this point, *Mitchell v. Swanwood Coal Co.*, 182 Iowa 1001, where the subject is fully discussed. We there said:

"When the servant has established the employment, and that the injury arose out of and in the course of his employment, a prima-facie case of negligence is made against the master."

In the case before us, such prima-facie case was made. The facts on which it rests are undisputed. Whether that showing and the presumption arising therefrom were successfully rebutted by the defense, was a question of fact, for the consideration of the jury.

Appellant sought to meet the case so made, by testimony tending to show due care in daily inspection and in other precautions to make the entry a reasonably safe place to work; but it clearly does not present a case which enables the court to say, as a matter of law, that the burden which the statute casts upon the employer in such cases has been successfully sustained. Counsel on both sides have taken much pains to explain the practical working of coal mines in the Appanoose field, and the methods followed in making

and maintaining entries through which miners pass to and from their work, and in which tracks are laid for the removal of coal. It is unnecessary to extend this opinion for a minute recitation of the facts. It is enough here to say that, as the coal is removed, entries or roadways several feet in width are preserved by building on each side a wall of so-called "gob," or waste matter, extending from the mine floor to the roof or cap rock which overlies the stratum of coal. The removal of the coal is followed by some degree of settling of the roof, which finally comes to rest upon the side walls of gob. To give head room, and to permit the operation of the cars on which the coal is carried away from the face, the height of the entry is increased by removing a stratum of clay which covers the floor, or by taking down the cap rock, or some of it, from the roof.

At the place where White was killed, the cap rock had been cut or arched out, leaving a ledge or projection of such rock extending from the side of the entry a short distance into the upper part of the entry, and resting on the side wall. How far this rock constituting the ledge extended into or beyond the gob wall of the entry was not known, and was not open to visual inspection; but there was testimony from which the jury could find that, if the rock was broken so near the projection into the entry as to create danger of its falling or slipping out, the danger could be discovered by proper sounding, and the peril removed by taking the rock down. Indeed, it would seem hardly to require expert or technical knowledge of mining to suggest to men of ordinary prudence that a ledge of rock not more than a foot in thickness, extending across the gob wall into an open space, and subjected to the tremendous pressure of countless tons of superimposed rock and earth material, would quite certainly break, in due time (if not already broken), and the ledge fall into the entry.

There was testimony also tending to show that the break, in this instance, had taken place at a point only a few inches from the face of the wall, and was not one of recent origin. In short, the circumstances were such that, even admitting

the truth of the company's testimony as to frequent inspec-
tions of the place, and of care displayed to make the place
reasonably safe, it still remained a question for the jury
whether, had that duty been properly attended to, the dan-
ger would not have been discovered and the defect remedied
before this accident occurred. *Mitchell v. Phillips Mining
Co.,* 181 Iowa 600.

The verdict for plaintiff cannot, therefore, be set aside
as being without support in the evidence.

II. Appellant next insists that a new trial should have
been granted because of the misconduct of appellee's coun-
sel in his argument to the jury. We regret to say that the
trial was quite evidently marked with an ex-
cess of zeal and degree of heat on part of the
respective counsel which have no proper
place in a court of justice. The court ap-
pears, however, to have made commendable effort to sup-
press these exhibitions, and to caution the jury against be-
ing influenced by anything except relevant facts, considered
with reference to the rules of law laid down in the instruc-
tions.

2. NEW TRIAL:
misconduct
of counsel.

Altogether, we are impressed with the view that the
trial court did not err in refusing a new trial on this
ground. It is not to be denied that appellee's counsel did
indulge in improper statements and insinuations, but he ex-
tenuates his offense by asserting that appellant's counsel
himself did not play the role of the inoffensive lamb, but
assumed an attitude "furious, violent, impetuous, forcible,
mighty; as a vehement wind, a vehement torrent, a vehement
fire and heat," and by such conduct provoked and invited
the retorts and declaration of which he complains. That
there were bushwhacking attacks and counter attacks by
counsel which deserve condemnation and rebuke must be
conceded; but they were by no means confined to one side
of the controversy, and, in view of the fairly successful ef-
forts of the court to hold an even rein on the contestants,
and to protect the jury from being misled, we are not jus-

tified in ordering a new trial. Moreover, we must assume that the jury was made up of men of fair average intelligence, and that the froth and foam of these wordy battles, however entertaining to the audience in the back seats, made no serious impression upon the minds of the triers of fact, performing their sworn duty in passing upon the evidence.

III. It appears that the wife and child of the deceased were present in court at the trial, and that counsel for the administratrix, in addressing the jury, referred to the widow and orphan more or less frequently, and said they were the persons who would receive the benefit of a recovery of damages. This also is relied upon as an abuse of counsel's privilege, and an unfair appeal to the sympathies and prejudices of the jury. To sustain this assignment of error would be an undue restriction of the oratorical privileges of the advocate. *Dowdell v. Wilcox,* 64 Iowa 721; *Wissler v. City of Atlantic,* 123 Iowa 11, 16; *Brusseau v. Lower Brick Co.,* 133 Iowa 245, 248; *Geiger v. Payne,* 102 Iowa 581, 593; *George Weeks & Co. v. Swafford Bros.,* 75 Iowa 491, 496; *State v. Burns,* 119 Iowa 663, 670; *State v. Drake,* 128 Iowa 539, 541. The control of arguments of counsel rests largely in the discretion of the trial court, and we do not interfere, where that discretion is not abused.

*3. NEW TRIAL: presence of relatives of deceased.*

IV. The court instructed the jury that the appellant was not an insurer of the safety of its employees, but was charged with the duty of exercising reasonable and ordinary care to furnish deceased a safe place to work, unless the place was rendered unsafe in the prosecution of the work which deceased, with others, was then doing. Counsel say this was erroneous, because deceased was not simply a "pick miner," but a "day man, inspector, remover of loose rock, and assistant pit boss." It is true deceased was, for the time being, a "day man:" that is, an employee who was paid day wages, and not a miner, paid a price per ton for coal produced. But it is not shown that, at the time of his injury, he was a pit boss or assistant boss, or was other than

*4. MASTER AND SERVANT: scope of employment.*

an ordinary servant or employee, doing a variety of work, according as he might be ordered or directed by his foreman or boss. He had spent much time as a mule driver in the entries. On the day of his death, he was sent, with others, to shovel out and remove the dirt or mud which had gathered along the side of the car track, and thus facilitate the drainage of the entry. There is no evidence that he was under any duty or obligation to care for the safety of the entry, other than the ordinary duty of the day man to use ordinary care to keep his eyes open, and, if he discovered loose rock or other defect or danger, to take necessary measures to correct it. There is nothing whatever to show or to sustain a finding that he was in any sense a vice-principal or representative of the employer, or was charged with the performance of the magisterial duty to maintain the entries in reasonably safe condition for the employees having proper occasion to use them. There was, therefore, no error in giving either the eighth or the ninth paragraph of the court's charge to the jury. Whatever may have been his duty when engaged in other lines of employment, it is obvious that, when he was ordered to work as an ordinary laborer, he was entitled to the same protection which was due to his fellow employees in such service.

V. Of the instructions requested by the defendant, it is sufficient to say that, in so far as they state correct propositions of law having any application to the case, they are fairly covered by or embodied in the charge 5. TRIAL: cautionary instructions: nonindulgence in sympathy. given by the court on its own motion. The refusal of plaintiff's request that the court should warn the jury against "indulging in sympathy for the widow or child," and, as a correlative to such admonition, should charge the jury "to refrain from entertaining prejudice against the defendant simply because he was and is a coal operator," was not erroneous. So far as appears from anything in the record, the court could rightly assume that the jurors were fair-minded men, needing no kindergarten instructions to insure

an honest effort on their part to find a verdict upon the evidence, and the evidence alone.

VI. The eighteenth request for instruction is that the jury has "no right to find that defendant was guilty of negligence in any respect in regard to the maintenance of the entry, unless there is evidence to support such finding." The request was properly refused. The force and effect of the proposition is to repeal the statute which makes the occurrence of an injury to the employee which arises out of and in the course of his employment, presumptive evidence that the employer was negligent and that such negligence was the proximate cause of the injury, and which places the burden on the employer to rebut such presumption. Hence, to sustain a recovery of damages, the jury need not find affirmatively that defendant was guilty of some specific negligent act or omission, but it is enough if, in view of all the evidence, the jury finds that defendant has failed to negative or rebut the statutory presumption.

6. MASTER AND SERVANT: Workmen's Compensation Act: overcoming presumption.

VII. Other errors assigned upon instructions given and requests for instructions refused, and upon rulings in matters of evidence, are entirely too numerous to justify us in extending this opinion for their discussion in detail. The record is one of unusual volume, and prepared with slight reference to our rules; but we have examined it at length with care, and find no reversible error. So far as the exceptions taken raise questions pertinent to the issues tried, they are governed and controlled by the conclusions we have announced in the foregoing paragraphs of this opinion. Of other points made, it may be said that they reflect the erroneous view which pervades much of appellant's argument: that plaintiff, in addition to proof that the injury to deceased arose out of and in the course of his employment, must also prove that defendant was guilty of negligence with respect to some specific act or omission inconsistent with due care for the safety of its employees, a proposition which, we have repeatedly pointed out, is without merit in

this class of cases, since the enactment of the statute, Section 2477-m, Code Supplement, 1913, which places the burden of negativing or rebutting the presumption of liability on the employer.

VIII. Appellant's final contention is "that, in any event, the damages assessed are grossly excessive."

At the date of his death, White was about 36 years old. His expectancy of life was 30.32 years. He 7. TRIAL: had been married about 14 years, and was excessive verdict. survived by his widow and a minor child. He was a man of sober and industrious habits. His earnings were about $5.00 per day. He had expended $800 to $1,000 for furniture, and paid considerable sums for medical and surgical services rendered his family, and, at the time of his death, had $350 in bank and in hand. He was an experienced miner, and, so far as appears, was in good health, with reasonable prospect of living out his expectancy. The jury assessed the damages to his estate at $3,500.

Assuming, as we must, upon the record, that the plaintiff was entitled to recover damages in some reasonable amount, the award made by the jury does not appear to be unreasonable or extravagant; or, to say the least, is not so manifestly excessive as to indicate that the jury was influenced or swayed by passion or prejudice. That a young, married man, of good and industrious habits, with an earning capacity of $1,500 per year, and having a life expectancy of 30 years or more, may reasonably be expected to accumulate an estate of the present worth of $3,500, is an estimate which hardly justifies counsel's fiery denunciation as an "unmitigated outrage." We find in it nothing which justifies us in interfering with the verdict.

In closing this discussion, it may be said that it is true that the statute to which reference has been made, places the defendant at considerable disadvantage, as compared with the position it would occupy if all the common-law rules applicable to negligence cases of this class were still available to the employer. But, having deliberately, and of

its own choice, refused to accede to the terms of the Workmen's Compensation Act, and having elected to submit to the alternative liability imposed upon employers taking that course, it has no ground of just complaint if, when suit is brought, it finds difficulty in avoiding the statutory restrictions which limit its defense.

We find no good reason for setting aside the verdict, or ordering a new trial. The judgment below is—*Affirmed.*

LADD, STEVENS, and ARTHUR, JJ., concur.