J. G. GRAHAM, Administrator, Appellee, v. CITY OF AMES,
Appellant.

ELECTRICITY:  Negligence—Spliced Wire.  Testimony reviewed, and
1  held to present a jury question on the issue of negligently maintaining a *spliced* wire carrying a high electric voltage.

NEGLIGENCE:  Electricity—Broken Wire.  Failure for a *very brief*
2  *period of time* after knowledge or warning to turn off the electricity on a broken line carrying a high voltage, in a public place, may constitute negligence.

NEGLIGENCE:  Electricity—Automatic Break Indicator.  Negligence
3  in the maintenance of high-tension lines may consist in the absence of some device which will automatically indicate breaks in the lines.

NEGLIGENCE:  Acts Constituting—Use of Alley.  It is not negligent
4  for a pedestrian to walk through a public alley.

NEW TRIAL:  Verdict—Excessiveness—$10,000.  Verdict for $10,000
5  for personal injury resulting in the death of a young man 18 years of age held nonexcessive.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

MARCH 13, 1923.

REHEARING DENIED SEPTEMBER 19, 1923.

ACTION by an administrator for damages for the wrongfully caused death of the decedent, such death having been caused by contact of the decedent with a live electric wire owned and operated by the defendant as a part of its electric system. The defense was a general denial. There was a verdict for the plaintiff. Upon motion for a new trial, the court, upon the

election of the plaintiff, reduced the verdict, and entered judgment for $10,000. The defendant appeals.—*Affirmed.*

*John Y. Luke,* for appellant.

*Lee & Garfield* and *Clarence Nichols,* for appellee.

EVANS, J.—The defendant owns and operates its own electric light and power plant. The decedent was killed by contact with one of its wires, carrying a voltage of 2,300. The accident occurred at 7 o'clock on the morning of October 13, 1920. The wire had broken, from some cause, during the night, and sometime after 10 P. M. The decedent was a young man 18 years of age, a college student at Ames, and engaged also mornings and evenings in the business of selling and delivering Des Moines newspapers. He was making his route at the time of the accident. This route took him through the alley near which the break in the wire had occurred, and where the broken end of the wire hung to the ground. There was no eyewitness to the immediate accident, though persons near by heard the first and only cry of the stricken man, and rushed to the scene, too late, however, to find him alive. At the close of the evidence, the defendant unsuccessfully moved for a directed verdict. One of its contentions here is that such motion should have been sustained. We find that the motion was properly overruled, for the reasons later appearing in our consideration of other specific errors.

The trial court submitted to the jury three alleged grounds of negligence, substantially as follows: (1) That the defendant had constructed its line out of inefficient material, and that it was inadequate for the service required; (2) that it had failed to use diligence either to repair the broken wire or to shut off the power therefrom; (3) that the defendant had failed to equip its plant with suitable devices to enable it to discover promptly a break in its primary wires.

The argument of appellant is directed against each of the instructions wherein alleged grounds of negligence were submitted. The argument in each case is predicated, in the main, upon absence of evidence in support of either ground.

I.   Was there evidence in support of the first ground? The.

wire in question had been in use for nearly 25 years. It was, however, a copper wire, and there was evidence by the defend-

**1. ELECTRICITY: negligence: spliced wire.**

ant that there is no deterioration in copper wire by mere use. It further appears that the wire had been previously severed, either by cutting or breaking, and that it had been spliced. The break or severing now under consideration was at the splice. The wire was not broken as the result of any storm, or as the result of any unusual stress or contact, so far as known. The workmen of the defendant company had put some stress upon it in the afternoon of October 12th, while engaged in fastening it to new poles. Whatever extra stress was put upon the wire, so far as known, was done at that time. Under the evidence, the inference was clearly permissible to the jury that the wire at the place of splicing was inadequate to bear the ordinary pressure to which it was subjected. We think the evidence was sufficient to carry this ground of negligence to the jury.

II. As to the second ground, it is earnestly argued that the time of the break and the time of the accident following were so near together that it should be held, as a matter of law,

**2. NEGLIGENCE: electricity: broken wire.**

that the defendant had had no reasonable opportunity to repair the break. The evidence tends to show that the break must have occurred after 10 o'clock at night. The time elapsing, therefore, between the break and the accident was very brief indeed. If the duty resting upon defendant was only that of discovery and repair, there would be much force in appellant's argument. But the danger created by this fallen wire was extraordinary and imminent. If a break had occurred in a sidewalk at that time of night, a repair at 7 o'clock in the morning would present a case of rather unusual diligence. While such a break in a sidewalk would present danger, yet the danger would not be imminent. It would be readily observable to the pedestrian, and the opportunity to avoid it would be quite abundant. In the case before us, the danger presented was both hidden and imminent. A live wire gives no warning. It was hardly conceivable that any boy or man could pass through the alley without imminent danger of death. This fact cast upon the defendant a measure of duty of ordinary care that was commensurate with the danger.

Granting even that the time elapsing was too short to have enabled the defendant to repair the break, it was not too short to have enabled it to shut off the power and thereby to remove the danger. The emphasis of appellant's argument is put upon the time reasonably required to make repair. There is no claim but that the power could have been shut off from this wire instantaneously. This was the mandatory duty that called most loudly upon the defendant. This argument presupposes discovery or knowledge. Plaintiff introduced evidence tending to show notice to the defendant, shortly after 10 o'clock, that the light service on this primary line had failed. Defendant attacks the sufficiency of such notice. One O'Brien called the defendant station, advising that the lights were out. He was asked to examine his fuse. He did so, and reported a second time that the trouble was not in his fuse. The company maintained fuses at the transformers and at the junction of the branch line which extended through the alleys. The necessary effect of the break in the line was to stop the service. The same result would have followed from the melting of a fuse. We think that the evidence of notice and discovery was sufficient to go to the jury, and to warrant a finding that the defendant was put upon inquiry and discovery, and was not justified in its failure to turn off the power.

III. Was there evidence in support of the third ground? It is made to appear that there is a device in more or less general use, known as a "ground detector." Its function is to

3. NEGLIGENCE: electricity: automatic break indicator.

disclose leakages which are caused by any ground connection. It is not automatic, but can be used at any time for detecting leakages resulting from any displacement of a wire which connects it with the earth. This is always the result with a broken wire, though leakages are not confined to broken wire. Other displacements of the wire, such as contact with a wet tree, will give the same result. The objection to the use of this device is that it is rather promiscuous in its disclosures, and discloses slight leakages as well as large leakages. Its signals differentiate, however, as between the large and the small. If one had been used at defendant's plant on the night of the break, it would have disclosed serious leakage. Though the evidence on

behalf of plaintiff on this question is not very satisfactory, and is by no means conclusive, we reach the conclusion that it was sufficient to go to the jury. In this class of cases, it is usually contended by the proprietors of high-tension lines, and is so contended by defendant herein, that it is economically impracticable to insulate such lines so as to render them safe in contact; and that the only practicable insulation possible is that of space and atmosphere. That is to say, lines are placed high upon the poles at as great a distance as possible from all other objects, and especially from all other wires. This isolation constitutes the insulation upon which proprietors rely. On this question of insulation, the trial court gave the defendant the benefit of all doubt, and withheld from the jury all issue upon the question of insulation. This being the method of insulation relied on by the defendant, its duty to maintain it in that form was all the more emphasized. An instrumentality so dangerous to human life must be either insulated or isolated. It has no justification to be dangling in broken ends near the byways of pedestrians. The ordinary care to be exercised by its proprietor must be commensurate with its dangerous character. In the presence of great danger, ordinary care becomes great care. The duty of discovery of a broken line which is thus imposed upon the proprietor may be a very burdensome duty, but that is only because it is commensurate with the danger involved.

IV. Defendant contends that the plaintiff failed to show that the decedent exercised ordinary care for his own safety. The suggestion put forth is that an alley is not intended as a

4. NEGLIGENCE: acts constituting: use of alley.

path for pedestrians; that the sidewalks are constructed for that purpose. The point made is that the very fact that the decedent passed through the alley, rather than upon the street, indicates such a departure from the ordinary course of travel as to suggest contributory negligence, and to put an added burden of negation on the plaintiff on that subject.

Alleys are made for use. They have their appropriate uses. They are intended as a convenience. Travel thereover is a proper part of their use, whenever the convenience of the user requires it. The decedent was making his usual route. If the alley was a convenient part of it, he had a right to use it. There

being no eyewitness to the immediate circumstances of the contact, we observe no reason why the ordinary presumption of due care on his part should not prevail.

The foregoing are the grounds of reversal principally relied on and argued by appellant. We shall not extend our discussion herein beyond the argument. Our examination of other errors suggested and touched upon satisfies us that they are not well taken.

V. Lastly, it is urged that the verdict was excessive, as rendered by the jury, and that the judgment is still excessive, as entered by the court. The verdict was for $14,500. The

5. NEW TRIAL: verdict: excessiveness: $10,000.

court gave the plaintiff the option of taking judgment for $10,000, which the plaintiff elected to take. A verdict for this amount is predicated upon the expectancy of the decedent, and upon the theory that he would probably leave an estate, at the termination of his expectancy, of $80,000. That is to say, $10,000 is the present worth of $80,000 at the termination of decedent's expectancy. This is a large assumption. The decedent was manifestly an enterprising young man. He had built up a considerable business in selling newspapers, and had built the same upon his own initiative. He had been engaged in some such line of work for about four years in other cities. At the time of his death, he was carrying on that occupation in connection with student work at the college. The record shows him to have been a young man far above the average in business energy and capacity. There can be no hard and fast rule by which the money value of such a life can be measured. We are unable to find a safe ground upon which we can say that a verdict for $10,000 was necessarily excessive, although it impresses us as very large.

We find no prejudicial error in the record, and the judgment of the district court is—*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.