B. G. Engle; Administratrix, Appellee, v. G. F. Nelson, Appellant.

No. 43099.

NOVEMBER 12, 1935.

Parrish, Cohen, Guthrie & Watters, for appellants.

Walter J. Barngrover, and Hughes, O'Brien & Hughes, for appellee.

ANDERSON, J.—There is little dispute in the facts. Plaintiff's decedent, Joseph Olson, was killed at about 7 o'clock p. m. on December 25, 1933, by an automobile driven by the defendant, G. F. Nelson. The accident occurred on the Lincoln Highway, United States No. 30, about twelve miles west of Cedar

Rapids, Iowa. A Mr. Foitle had driven his automobile off the highway into the ditch on the north side, and Joseph Olson, the decedent, who was employed by a garage in Cedar Rapids, was sent out in a service car for the purpose of towing the Foitle car back to Cedar Rapids. He was accompanied by Foitle, the owner of the disabled car, and one Albert Boyer, a friend of Olson's. At the place of the accident the highway runs straight east and west, has an 18-foot pavement with a five or six foot shoulder on each side. Upon arriving at the scene of the wrecked car, the decedent backed his service car up to the rear of the Foitle car and pulled it on to the north half of the paving, facing east towards Cedar Rapids. He then unhooked the service car, turned it around, and drove immediately in front of the disabled car. Both the disabled car and the service car had their headlights burning facing east. The disabled car was then raised by means of a crane on the service car, so that it could be towed back to town. This operation raised the disabled car so that its headlights threw its lights above and over the cab of the service car. During the time of these operations the deceased sent his companion, Albert Boyer, east on the highway with a large three-cell flash-light for the purpose of warning traffic approaching from the east. Boyer was from a block to a block and one-half east of the service car. The highway east from the place of the accident was straight and level for 700 or 800 feet and then there was a slight raise to the crest of the hill 500 or 600 feet farther east. The night was dark, cold, the wind was blowing, and there was some snow in the air and some snow on the edges of the pavement. After the service car had been attached to the disabled car and the deceased was ready to proceed, he called to Mr. Boyer to come back that he was ready to go. The deceased then passed around to the north side of the service car, and the evidence shows that he turned his back to the east and was in the apparent position of either warming his hands or lighting a cigarette. Mr. Foitle was just opposite the deceased on the south or right-hand side of the service car near its front door. Mr. Boyer started to walk west on the highway toward the service car when he was called and told they were ready to go. He had proceeded west to a point about 75 feet east of the front of the service car when he saw the rays of an automobile light coming over the crest of the hill about 1,400 feet to the east. He then started to run east on the highway to-

wards the on-coming automobile and ran toward the on-coming car about 150 feet down the middle of the highway, waving his flash-light. It was then necessary for him to get off from the pavement to avoid being struck by the on-coming car. He testifies that the car passed him going at a speed of between 50 or 60 miles an hour and without slackening its speed continued west and turned to the right on the north shoulder of the highway striking and killing Mr. Olson, colliding with the disabled car at the rear of the service car, and proceeding west some distance, then turning completely around facing east. Mr. Foitle also testified that the on-coming car, which was defendant's Ford V 8, was traveling more than 50 miles an hour and did not slacken its speed as it approached the service car. The south half of the pavement was open, and both Mr. Foitle and Mr. Boyer testify that there were no cars approaching from the west. The defendant, Nelson, testifies that he saw the lights of an approaching car a quarter or half mile west. The defendant himself testifies that he was an experienced driver, that he was driving an eight-cylinder Ford car, and that its top speed would vary between 83 and 85 miles per hour. He also said that he had his bright lights burning and that he could see a considerable distance ahead of his car, some 300 feet. He was making a drive from Burlington, Wisconsin, to Des Moines, Iowa, where he is manager of the Des Moines branch of the Ford Motor Company. He says that he first saw the lights of the service car as he came over the brow of the hill 1,200 or 1,400 feet east, and that he knew that the service car was on the north half of the pavement. He says as he came down the hill after seeing the lights of the service car and knowing that it was on the north half of the road he applied his brakes and slowed down to about 35 miles an hour; that he saw the man with the flash-light when he was about 10 feet from him; that he was standing in the center of the highway a little to the north of the black line. He also testified that when he saw Boyer with the flash-light he could have stopped his car before he reached the service car and collided with it, but that he did not intend to stop. He also testified that Mr. Olson, the deceased, was standing on the north side of his service car possibly a foot or a little closer to it. He said, ''I know that I hit Mr. Olson.'' Defendant also testifies that he knew the service car was stationary when he first saw it 1,200 feet away. It is manifest from the foregoing facts and the ad-

missions of the defendant that he had full warning and knowledge of the presence of the service-car in ample time to prevent the accident, but disregarding the fact that the car in front of his path was stationary, and disregarding the warning of the flash-light, he continued on his course and turned to the right of the service car so close to it that he nicked the front fender and struck and killed Mr. Olson, who was standing within a foot of his service car. With the record as above outlined, the case was submitted to the jury which returned a verdict in favor of the plaintiff in the sum of $10,000. A motion for a new trial was overruled, and the defendant appeals.

■■■ There are fifteen assignments of error, some of which we will notice. Appellant's first contention is that the decedent, Mr. Olson, was guilty of contributory negligence as a matter of law for the reason that he failed to comply with section 5067-e1, C., '35, with reference to "flares". The enactment referred to provides that "motor trucks and combinations thereof operating on the highways" shall be equipped with portable flares which may be plainly visible for a distance of 500 feet, and that the operator of such "motor truck or combination" shall, upon bringing his vehicle to a stop upon or adjacent to the traveled portion of a highway during the period from one-half hour after sunset to one-half hour before sunrise, place a flare at the side of such vehicle. It also provides that a failure to do so shall be a misdemeanor.

The appellant contends that the service car of the deceased was a motortruck within the meaning of the above statute, and that the flash-light used on the night in question was not a compliance with the statute. The service car was not a truck or a combination thereof. It was a Cadillac touring car with the rear part of the body removed and a wrecking crane installed therein. The only purpose of placing the so-called "flare" near such a vehicle would necessarily be to warn other travelers upon the highway of the presence of such vehicle. And in this case it might well be said that the use of the flash-light as shown by this record would be a sufficient compliance with the statute in question. Moreover, if the defendant in this case had full knowledge of all of the facts and circumstances, then it stands to reason that the absence of a "flare", even if there was such absence, would be immaterial and would not warrant a finding or holding that the person in charge of the stationary vehicle was guilty of

actionable negligence or contributory negligence. Then too, under the record here, the deceased had completed his work and was ready to move, and even though he had placed a "flare" he would not be expected to leave it in the highway, and would necessarily put it out and put it back in his vehicle prior to the time that he started away. There would necessarily be an interim of time when one would be justified in not leaving a flare in the highway; and in this case, the presence of Mr. Boyer some 150 or 200 feet east of the standing service car with his large flashlight would be more of a warning signal to the on-coming car than would a "flare" set in the highway under the circumstances.

The case of Hanson v. Manning, 213 Iowa 625, 239 N. W. 793, is so nearly parallel in its facts that the pronouncements therein made are controlling in this case. In the Hanson case the car was headed east and stopped on the right or south side of the graveled roadway to repair the left rear tire. A service car was backed up and stopped 10 or 15 feet west of the disabled car facing west. It was dark, and the road west from the disabled car was straight. The lights of both the disabled car facing east and the service car facing west were burning. The men were working repairing the tire on the disabled car. The defendant's car came from the west and without any signal pulled out and passed the standing cars so close that it hit one of the occupants of the touring car who was standing very close to the service car. The defendant's car was going at about 50 miles an hour. In that case we held that the "plaintiff was not required * * * to keep a constant lookout for approaching vehicles. He was only required to exercise ordinary care. Whether he did so or not is a question of fact for the jury." There was no question in that case as to the "flare" statute as it had not been enacted at that time, but we held further in that case that the driver of an automobile has the right to stop on a paved highway, even during the nighttime, to repair his car, provided he exercises reasonable care for his own safety under all of the existing circumstances. See, also, Vass v. Martin, 209 Iowa 870, 226 N. W. 920; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Winter v. Davis, 217 Iowa 424, 251 N. W. 770; Albrecht v. Waterloo Construction Co., 218 Iowa 1205, 257 N. W. 183; Bauer v. Reavell, 219 Iowa 1212, 260 N. W. 39; Towberman v. Des Moines City R. Co., 202 Iowa 1299, 211

N. W. 854; Ryan v. Trenkle, 203 Iowa 443, 212 N. W. 888, 889; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110, 112; Lukin v. Marvel, 219 Iowa 773, 259 N. W. 782; Wilkinson v. Queal Lumber Co., 203 Iowa 476, 212 N. W. 682.

 It is elementary, and we have frequently held, that a violation of a statutory requirement is immaterial if such violation was not a direct or contributing cause of the injury. In the Ryan case, supra, we said:

"Was the failure, if any, of the driver of the automobile to give the statutory or other warning signals a proximate cause of the injury claimed? It is elementary that negligence may not be predicated on the failure to give signals when such failure in no wise can be said to be the proximate cause of the injury. * * * A person who has knowledge of the presence of a train or auto which imparts to him the very thing that a signal was intended to impart cannot, under ordinary circumstances, predicate negligence on the failure to give a signal."

In the Scoville case, supra, we said:

"The only function to be served by lights, or by an attendant, would be to warn travelers of the presence of the obstruction in the road. Such ground of negligence could not be available to a plaintiff, who saw the truck for hundreds of feet in his approach thereto, and had no need of further warning."

In the Lukin case, supra, we said:

"The headlights of decedent's car were adequate notice to defendant of the presence of her car on the highway. * * * There was evidence to show that defendant had more than the entire east half of the roadway on which to pass decedent's car."

Under the appellant's own testimony in the case at bar, he saw the standing cars when he was 1,200 or 1,400 feet away from them, and knew that they were upon the north half of the highway immediately in his path, and knew that they were stationary. Under these circumstances, the presence of a "flare" or any other signal would have given him no more notice and no more knowledge than he had by actually seeing the stationary cars in front of him. However, admitting for the purpose of argument only that the deceased was guilty of negligence in not placing a "flare" in the highway, can it be said that such negli-

gence contributed in any way to the accident? We do not think so, and our conclusion is that there is no merit in appellant's position under alleged error, No. I.

The grounds of negligence upon which the plaintiff claims and as stated in paragraph one of the court's instructions were that the defendant was negligent in the following particulars:

(1) In operating his car at an excessive rate of speed at the time and place of the accident.

(2) In not keeping a proper lookout.

(3) In not having his vehicle under control.

(4) In failing to give decedent any warning of his approach.

(5) In failing to drive his car at a speed that would permit him to bring it to a stop within the assured clear distance ahead.

The court then instructed that the burden of proof was upon the plaintiff, and that he must prove by a preponderance of the evidence each of the following propositions:

(1) That the defendant was negligent in one or more of the particulars alleged.

(2) That such negligence was the proximate cause of the injury.

(3) That the decedent was not guilty of any negligence contributing in any manner or degree directly to the accident.

(4) The amount of damages sustained.

Appellant's objection to this instruction is that it does not correctly state the essentials of the actionable negligence as outlined in the case of Williams v. Cohn, 201 Iowa 1121, 206 N. W. 823, and, further, that the instruction as given permitted the jury to find for the plaintiff if they believed from the evidence that the plaintiff had proven certain specifications of negligence, and did not tell the jury that the burden was on the plaintiff to prove all of the foregoing propositions. The criticism to this instruction is highly hypercritical, as the court in later instructions very fully and ably defined actionable negligence. The instructions must be read as a whole. The objection to this instruction is without merit.

The appellant complains of the use of the word directly in paragraph 3 of instruction I, as above quoted, and claims that the negligence of the plaintiff's decedent need not be one of the direct causes of the accident, and that the language of

this instruction directs the jury that the negligence of the decedent must be one of the *direct* causes of the accident. The instruction does not so say. The language of the instruction is that the jury must find that the decedent "was not guilty of any negligence that contributed in any manner or degree directly to the accident." We think this instruction is a correct statement of the law. The instruction in practically the same language has been approved by this court in many cases. See Towberman v. Des Moines City R. Co., supra; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; O'Hara v. Chaplin, 211 Iowa 404, 233 N. W. 516; Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270, 272; Banning v. Chicago, R. I. & P. R. Co., 89 Iowa 74, 56 N. W. 277.

In the case of Albert v. Maher Bros., 215 Iowa 197, 243 N. W. 561, we quoted from the Banning case as follows:

"If the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery." And we further said, "That quotation in the Towberman case was selected after a review of many decisions. We made the selection because of our desire to present the quotation as a model for future instructions."

We conclude that this assignment of error is without merit.

Appellant's next assignment is that the court erred in giving instruction No. III in defining "preponderance of evidence" and "greater weight of evidence". Without setting out the instruction, it will suffice to say that the identical instruction was approved in an opinion written by Justice Donegan in Priest v. Hogan, 218 Iowa 1371, 257 N. W. 403.

■■■ Appellant next lodges a complaint as to the giving of instruction No. IV, defining negligence. The instruction is as follows:

"Negligence is the want or omission of ordinary care; the failure to do something which a reasonably prudent person guided by those considerations which ordinarily regulate the conduct of human affairs, under the circumstances would do; or the doing of something which such a person, under such circumstances would not do."

Appellant's complaint is as to the use of the word "something" and the claim is that the use of that word permits the

jury to speculate and take into consideration matters not in evidence. We do not think there is any merit in this contention. The instruction contains a correct definition of negligence.

▮▮▮ Appellant next complains as to the giving of instruction No. VIII, which is as follows:

"You are instructed that if in the operation of the defendant's automobile at the time and place and under the circumstances and conditions existing at the time, a careful and prudent person in the exercise of reasonable and ordinary care would have given a warning of his approach to the place where the accident occurred, then it was the duty of the defendant, in the exercise of such reasonable and ordinary care to have given warning of his approach, and a failure on his part to do so would be negligence."

This instruction is in the usual and approved form and does not, as claimed by the appellant, instruct the jury that a failure to warn would permit the returning of a verdict for plaintiff. Standing alone, the instruction might be subject to criticism, but as we have said, the instructions must be read as a whole, and when read in connection with instruction No. IX it is not subject to criticism. In instruction No. IX, the court told the jury that if they found the defendant negligent in any of the particulars charged, "their next duty is to determine whether such negligence was the direct and proximate cause of the accident," and that in order to warrant a recovery by the plaintiff it must not only be shown by a preponderance of the evidence that the negligence of the defendant was the direct and proximate cause of the accident, and that it must be more than a contributing cause. There is no merit in the objection as to the giving of instruction No. VIII.

▮▮▮ Appellant's next assignment of error is as to the giving of instruction No. XI, and the complaint against the instruction is that it fails to include the expression "lack of evidence, if any, as well as to actual evidence." The omission of this expression in an instruction was criticized in State v. Patrick, 201 Iowa 368, 207 N. W. 393, and also in Dahna v. Fun House Co., 204 Iowa 922, 216 N. W. 262, but we held that while the instruction was unfortunate in its phraseology, that it was not prejudicial. The instruction complained of was in the following language:

"In determining whether the plaintiff's decedent, Joseph Olson, was guilty of negligence contributing to his injury and death, you will take into consideration, as disclosed by the evidence, the position of the truck on the highway, the condition of said highway in the vicinity where the truck was standing, whether it was dark or light; the warnings, if any, given by the said Joseph Olson, deceased, the position of the truck, the position of said Joseph Olson, on said highway, whether he was keeping a proper lookout for approaching vehicles, and all other facts and circumstances as disclosed by the evidence, showing or tending to show whether the plaintiff's decedent was exercising the care that a careful and prudent person would have exercised under the same circumstances and conditions then existing."

In the cases in which similar instructions were criticized for the omission of the phrase "lack of evidence, if any", the criticized instructions were cautionary instructions. And in the instruction under consideration, the jury were not limited to the "actual evidence produced" but were told to take into consideration the *facts and circumstances as shown by the evidence and all other facts and circumstances.* We find no prejudicial error in the giving of the instruction complained of.

 The next error assigned is as to the giving of instruction No. VI, in which the court instructed the jury as to the meaning of the statutory provision requiring the defendant to drive his car at such a speed that would permit him to bring it to a stop within the assured clear distance ahead, and in defining the assured clear distance ahead. The part of the instruction complained of is as follows:

"On the other hand, if the driver was not driving at a greater rate of speed than an ordinarily careful and prudent person would drive a motor vehicle under the same or similar circumstances, or was not driving at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead, he would not be guilty of negligence in respect to speed."

"By the words 'within the assured clear distance ahead' as used in these instructions is meant that the operator of an automobile shall at all times be able to stop his car within the distance that discernible objects may be seen ahead of him."

This identical instruction has been approved by this court. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103, and many other cases.

■■ A further complaint is lodged against this instruction because it fails to permit the jury to find a legal excuse for a violation of the assured clear distance ahead rule. We have held that "legal excuse" should not be considered or submitted to the jury unless some evidence thereof has been offered in the record. Winter v. Davis, 217 Iowa 424, 251 N. W. 770; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Lindquist v. Thierman, supra. There is no evidence offered in this record tending in any way to show a "legal excuse" on the part of the defendant for a failure to comply with the rule, and therefore a submission to the jury of such question would not be warranted.

■■ Complaint is next lodged against instruction No. XII, which deals with the satutory requirement as to portable flares. And the part of the instruction criticized is as follows: "and if you find that that was the contributing cause to the accident which happened, then the plaintiff cannot recover in this case." The appellant contends that the expression "contributing cause" and the term "proximate cause" are identical in meaning, and for this reason the use of the phrase "contributing cause" in the instruction under consideration was error. We have repeatedly held that contributory negligence, in order to bar a recovery by one guilty thereof, need not be the proximate cause. This instruction follows our prior pronouncements to the effect that if the negligence of the decedent "contributed in any way or in any degree directly" to his injury and death, a recovery cannot be had. If the negligence of the decedent was a contributing cause to the injury, it would defeat a recovery, although it may not have been the proximate cause.

In Hogan v. Nesbit, supra, we said:

"Consequently there is a well defined distinction between the proximate cause of an injury and a contributing cause thereto."

In Albert v. Maher Bros., supra, we said:

"If the injured party *contributed* in any way, or in any degree directly to the injury, there can be no recovery."

This instruction follows the model outlined in the Towberman case, and in the Hogan case, we say "That quotation in the Towberman case was selected after a review of many decisions. We made the selection because of our desire to present the quotation as a model for future instructions. * * * To avoid confusion or uncertainty it will be well for trial courts to carefully follow this model in the future." The objection to the instruction under consideration is without merit.

██ The next objection is to instruction No. XIV. In this instruction the jury were told "that if they found plaintiff's decedent, Joseph Olson, being in a place of safety, in a sudden and unexpected act upon his part, which the defendant in the exercise of ordinary care did not or could not anticipate, jump or ran from said place of safety, etc., plaintiff could not recover." The particular part of this quoted instruction of which appellant complains is "being in a place of safety". The record shows that the deceased was standing within a foot of the left door of his service car. He was not a trespasser and had a lawful right to be there. Therefore the instruction properly assumed that he was in a place of safety at the time of the accident. And the instruction was properly given.

The next complaint is that the court erred in failing to give an instruction on the question of impeachment. The answer to this is that there was no occasion for such an instruction and none was requested by the defendant.

The next complaint of appellant is that the instructions as a whole repeatedly referred to matters which the defendant was required to prove and repeatedly emphasized the negligence of defendant, and failed to refer in like manner to the burden which was upon the plaintiff. There is no merit in this complaint. The instructions as a whole fully and fairly submitted to the jury the rules upon which the jury should decide the issues submitted to it.

██ The next complaint is that the court erred in not submitting to the jury the question of decedent's failure to yield one-half of the traveled way in meeting another vehicle, as is prescribed in section 5020 of the Code. This section applies when two vehicles are *meeting* each other on a public way, and

in our view of the record in this case it would have been error for the court to instruct that under this section the deceased was required to give one-half of the traveled portion of the highway in meeting the defendant. The service car of the decedent was not moving nor meeting another vehicle. It is not required that a person do something which the physical facts show is impossible.

■■■ The next contention of the appellant is that the verdict is excessive. The record shows that Olson, the deceased, was a trustworthy, ambitious, efficient man. He had an expectancy of life of 40.16 years. He was twenty-three years of age; married, with one son two years old; in perfect health, strong, energetic, bright, and intelligent; a high school graduate, sober, and industrious. At the time of his death he was earnin $20 per week. He was promised a $5 raise in another week, and his employer testified that he intended to raise his wages to $37.50 a week.

In cases of this kind the court can give to the jury no definite rule as to the determination of the damages resulting to the estate of the deceased, and unless it is clearly shown that a verdict is the result of passion or prejudice, or of a palpable disregard of the evidence, it should not be within the province of the court to interfere with it.

In the case of Hanna v. Central States Electric Co., 210 Iowa 864, 232 N. W. 421, we permitted a verdict of $6,000 to stand where the deceased was a Mexican woman and was a worker in the fields and had not accumulated anything.

In Grafton v. Delano, 175 Iowa 483, 154 N. W. 1009, the deceased was fifty-three years old with an expectancy of sixteen years. He was earning about $1,000 a year and we permitted a verdict of $9,024 to stand.

In Nicoll v. Sweet, 163 Iowa 683, 144 N. W. 615, L. R. A. 1918C 1099, Ann. Cas. 1916C 661, the deceased was twenty-six years old, earning from $56 to $108 a month. His health was impaired, and we permitted a verdict of $8,000 to stand as not excessive.

In Rastede v. Ry. Co., 203 Iowa 430, 212 N. W. 751, the deceased was twenty-nine years old, was married, and had two children, and was living on a farm. There was no evidence of any accumulations, and we approved a verdict of $14,500 as not excessive.

In Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, we approved a verdict of $7,500 as damages for the death of a seventeen year old school boy with no accumulations and no earning power.

In Loveless v. Town of Wilton, 193 Iowa 1323, 188 N. W. 874, we approved a judgment for $12,000.

In Graham v. City of Ames, 196 Iowa 337, 192 N. W. 299, we held a verdict of $10,000 was not excessive, and in this case the deceased was eighteen years of age and a newsboy, going to school.

In Yeager v. Ry. Co., 156 Iowa 166, 135 N. W. 638, the deceased was a workman, and we allowed a judgment of $9,000 to stand.

In Korab v. Ry. Co., 165 Iowa 1, 146 N. W. 765, Ann. Cas. 1916E 637, we held $10,000 was not excessive damages for the death of a railroad brakeman.

In Carter v. Sioux City Service Co., 160 Iowa 78, 141 N. W. 26, we held a $12,000 verdict was not excessive.

In Collins v. City of Council Bluffs, 32 Iowa 324, 7 Am. Rep. 200, we permitted a verdict for $15,000 to stand.

And in the recent case of Shutes v. Weeks, 220 Iowa 616, 262 N. W. 518, the deceased was a married man thirty-four years old with an expectancy of life of thirty-two years. His average monthly income from a tire businss was from $125 to $150. A verdict had been returned for $30,000. It had been reduced by the trial court to $21,000, and was further reduced by this court to $12,000 and permitted to stand in that amount.

It must be concluded from the foregoing that the verdict for $10,000 in the case at bar is not excessive. As we have said, it is the duty of the jury in cases of this kind to assess the amount of the damages. That duty is imposed by reason of their fitness to discharge such duty and determine the amount of damages to the estate of a deceased person. It cannot be said that courts are in a better position to discharge that duty than are juries. We find nothing in this record which would warrant us in disturbing the verdict of $10,000 as returned by the jury.

■■■ The last assignment of error is that the plaintiff's attorneys were guilty of misconduct in their argument to the jury. We have carefully read and considered the objectionable parts of the plaintiff's argument and are constrained to hold

that there is no prejudicial error shown in the record in this regard. It may be that on some of the occasions the attorneys were getting close to the border line, but in each instance when objection was made to the argument the objection was sustained by the court and the jury admonished not to consider the same, and in some instances the offending attorneys withdrew the objectionable statement and asked the apology of the court and jury, and this at the time seemed to be satisfactory to appellant's counsel. We have said, ''He who objects to the conduct of counsel in the matter of argument to the jury, and thereby induces the court to admonish and caution the offending counsel, or to otherwise rule to such extent as the court may then deem fit and proper, will be presumed fully satisfied with the action of the court, in the absence of a request for some other and more specific action.'' Arnold v. Douglas & Co., 176 Iowa 405, 155 N. W. 845. See, also, State v. Burris, 198 Iowa 1156, 198 N. W. 82; State v. Burns, 119 Iowa 663, 94 N. W. 238; Starry v. Hanold, 202 Iowa 1180, 211 N. W. 696; Mitchell v. Mystic Coal Co., 189 Iowa 1018, 179 N. W. 428; State v. Burzette, 208 Iowa 818, 222 N. W. 394; Henriksen v. Crandic Stages, 216 Iowa 643, 246 N. W. 913.

We have carefully considered appellant's complaint on the refusal of the court to give requested instructions and are constrained to hold that such of the requested instructions as were proper to give to the jury were substantially incorporated in the court's instructions as given to the jury, and that there was no error in refusing to give appellant's requested instructions. It follows from the foregoing discussion that we find and conclude that there is no prejudicial or reversible error in the record, and the case must be, and it is, affirmed. The motion to strike appellee's amendment to the abstract submitted with the case is immaterial in the view we take of the record, and the same is hereby overruled.—Affirmed.

KINTZINGER, C. J. and POWERS, MITCHELL, ALBERT, HAMILTON, and PARSONS, JJ., concur.