Esther L. Elliott, Administratrix, Appellee, v. Des Moines Railway Company, Appellant.

No. 43613.

February 16, 1937.

Rehearing Denied June 18, 1937.

McMartin, Herrick & Langdon, for appellee.

Corwin R. Bennett and J. W. Albert, for appellant.

Anderson, J.—This action was commenced and prosecuted by Esther Elliott as administratrix of the estate of Ebert Z. Bell, who met his death as the result of a collision between a Chevrolet automobile driven by him and a street car owned and operated by the defendant, Des Moines Railway Company. The accident in question occurred about 7:40 p. m. on March 3, 1935, at the intersection of Euclid Avenue and Cornell Street in the city of Des Moines. Euclid Avenue runs east and west in the north part of the city, is paved with brick, and U. S. highway No. 6 is routed over this avenue. Cornell street is 31 feet wide and is paved, runs north and south and intersects Euclid Avenue at the place of the accident involved in this case. The defendant

company maintains a single track on Euclid Avenue which runs east to the intersection of Cornell Street where it turns north. The collision in question occurred between an east bound street car turning north at this intersection and the automobile driven by the decedent traveling west. The street car track is in the center of Cornell Street and a little to the north of the center on Euclid Avenue. To a person traveling west on Euclid Avenue an east bound street car is first observable 300 feet west of the intersection in question and the driver of such automobile can see the street car track turning to the north on Cornell Street at least a third of a block east of the intersection. This is plainly shown by the photographs introduced in the record by both plaintiff and defendant. The physical situation as we have described it at the place of the accident has existed for several years. The decedent had lived in that part of the city for at least one year and a half preceding the accident and he had traveled over this intersection in both directions many times. On the evening of the accident the lights inside the street car as well as the headlight were burning as were also the headlights on the decedent's automobile. The appellant claims that the street car rails at the point of the accident were damp and slippery while witnesses for the appellee testify that they were dry. There is also a controversy as to the visibility at the time of the accident. However, we do not think that either of these controversies is material to a determination of the questions involved. Some 200 feet east of Cornell Street and on the north side of Euclid Avenue there was a ''SLOW'' sign and there was also a sign in the vicinity showing ''STREET CAR CROSSING''. There was no obstruction between the decedent's automobile and the street car that could have obscured the view of either the decedent or the motorman. The decedent's automobile was traveling on the north side of Euclid Avenue in a westerly direction approaching the street car, and as the street car moved into the intersection decedent's car was about 200 feet east of the intersection. The motorman momentarily looked to the north to observe whether there was any traffic on that street and almost instantly as he turned his head again toward the east he discovered the decedent's car 20 feet east of the street car and proceeding directly toward him. The street car was then between one-quarter and one-half of the way around the curve. The motorman testified that he rang the foot bell

twice as he was approaching the intersection but that he did not have time to again ring it after he saw the decedent's automobile 20 feet away from him. There was some testimony from a witness traveling 50 feet behind the street car in an automobile that the bell was not sounded as the street car approached the intersection, but this is immaterial as we have held that a person who has knowledge of the presence or approach of a train or other vehicle that negligence to give a signal or sound a warning cannot be predicated on a failure so to do. Engle v. Nelson, 220 Iowa 771, 263 N. W. 505; Ryan v. Trenkle, 203 Iowa 443, 212 N. W. 888, 890; Sandell v. Des Moines City Railway Co., 184 Iowa 525, 168 N. W. 226, 229.

There was also a controversy in the testimony as to the speed at which the street car was being operated as it approached the intersection in question, but there is no contention that the street car was operated at an excessive rate of speed and it is not sought to predicate negligence thereon. One of appellee's witnesses testified that the street car was traveling about twenty-five miles an hour but slackened its speed as it started around the turn. Appellee's witnesses also testified that at that time they heard the sound of the brakes on the street car and that the street car slowed down abruptly when it was about one-quarter of the way around the curve. These witnesses also testified that their estimate of the speed of the automobile at the time of the collision was about fifteen miles per hour. The motorman testified that the speed of the car immediately before the collision was about seven or eight miles an hour, and the testimony of the appellee shows that the street car moved forward about half its length after the collision occurred. The decedent was thrown out of the automobile by the collision and received injuries from which he died. The motorman testified that as soon as he saw the decedent's automobile twenty feet from the street car he cut off the power and applied the emergency brake, and it appears that the application of this brake opens the sand outlets and causes sand to be distributed on or near the rails. He also testified that he did all in his power and everything that was possible to stop the street car before the collision; that there was no means or appliance which he could use other than he did use to slow up the street car or stop it before the collision occurred. The left front corner of the street car was about over the center of the track as it was rounding the corner and at the instant of

the collision, and this part of the street car came into collision with the decedent's automobile. There was an iron heater located in the front window in the left front corner of the car. The control or power lever is operated with the left hand and the brake controls are operated with the right hand of the motorman. When the contact occurred this heater was knocked from its moorings and against the left hand of the motorman which was on the power control lever and then hit the motorman in the chest. This occurrence moved the power lever slightly open and knocked the air brake control off to some extent and permitted the street car to move slightly forward, and the motorman testified that he supposed the street car moved forward seven or eight feet after the impact before he could get back and re-apply the brakes. The testimony of the motorman as to the distance decedent's car was east of the street car just an instant before the collision and as to the motorman's efforts to stop the street car and avoid the accident stands in the record undisputed. And these facts are the material facts to be considered in the dispute of this appeal.

As has been indicated, a motion to direct a verdict by the defendant was overruled by the court and the case submitted to the jury resulting in a verdict for the plaintiff.

The appellant contends that the court erred in overruling its motion for a directed verdict and in submitting the case to the jury, and also contends that there was error in the court's instructions. The pertinent and vital question to be disposed of is whether the record warranted a submission of any material controverted facts to the jury. The appellee states in her brief and argument that the case was submitted to the jury solely on the last clear chance doctrine. The trial court in its instructions did properly define and submit the doctrine of last clear chance. However, in instruction No. 5, the court injected an element which was not warranted by the record and which we are of the opinion was erroneous. Instruction No. 5 is as follows: "The burden of proof is upon the plaintiff and before she can recover from defendant, she must establish by a preponderance or greater weight of the evidence, each of the following propositions, to wit:

"1. That the defendant's motorman discovered the deceased, or the automobile driven by him, in a position of danger or peril.

"2. That the said motorman so discovered the deceased or

the automobile driven by him at a time and place when by the use of ordinary care he could have stopped the street car or reduced the speed of said street car, *or by sounding a warning of his approach,* could have avoided the accident.'' (Italics supplied.) The insertion of the italicized words in the foregoing instruction was error. There is no evidence from which it can be inferred that the sounding of a warning immediately before the accident would have avoided the collision. The lights on the street car supplied a sufficient warning to the decedent of the presence and approach of the street car, and in such instance the failure to sound or give signals cannot constitute negligence. Engle v. Nelson, supra; Ryan v. Trenkle, supra; Sandell v. Railway Company, supra.

In the last case cited we said, ''If the plaintiff knew all of which a warning could have informed her, she may not complain that none was given.'' And in the Engle and Ryan cases we held, ''A person who has knowledge of the presence of a train or auto which imports to him the very thing that a signal was intended to import cannot, under the circumstances, predicate negligence on the failure to give a signal.'' The record shows that the decedent had a plain open view of the fully lighted street car prior to the time it reached the curve and while it traveled approximately fifty feet on the curve, and the giving of any signal would not have given him any other or further knowledge of the existence and movement of the street car. The decedent saw the street car at a time when he was at least two hundred feet east of it and traveled at least one hundred and eighty feet during the very short interval in which the street car was partially making the turn. The undisputed record shows that he was within twenty feet of the street car just an instant before the collision occurred. It also appears without controversy that the motorman of the street car did not have time after he discovered the decedent within the zone of danger to sound any warning, and it conclusively appears that if such warning had been sounded it would not have resulted in an avoidance of the accident.

In any event there appears no basis for the submission of the doctrine of last clear chance to the jury under this record. It is conceded, indeed as it must be under this record, that the decedent was guilty of negligence, and that such negligence continued up to the instant of the collision. The accident happened

in a mere moment or flash and it conclusively appears that the motorman did all that was possible for him to do to avoid the collision in the very brief moment intervening after he discovered the decedent within the zone of danger and peril, and under the doctrine of last clear chance he must have discovered him in time to have avoided the accident in the exercise of reasonable and ordinary care and prudence. The motorman had a right to assume, when he saw the decedent's car approaching two or three hundred feet east of the intersection, that the driver of the automobile would observe the "SLOW" and "STREET CAR CROSSING" signs and would use ordinary care and prudence to avoid a collision with the street car which was in plain and unobstructed view in front of him; and no negligence of any kind could be found as against the motorman until he actually saw the decedent within the zone of danger, and the undisputed record shows that this occurred when the decedent was but twenty feet away from the street car and in such close proximity thereto that anything the motorman could have done would not have avoided the accident.

The doctrine of the last clear chance presupposes negligence on the part of the decedent, Lynch v. Railway, 215 Iowa 1119, 245 N. W. 219; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393, and proceeds upon the theory that notwithstanding the decedent's negligence, if the defendant had knowledge of such negligence and of the perilous position in which the decedent placed himself, it was the defendant's duty to stop the street car or slacken its speed and avoid the accident if, in the exercise of ordinary care, that could be done after the discovery of the decedent within the zone of danger. The theory of the doctrine is that the later or last negligence becomes the proximate cause.

The theory of the appellee is, as it must necessarily be, that after the motorman discovered the decedent within the zone of danger he had reasonable time within which to have avoided the accident by the exercise of ordinary care. The record does not sustain this theory.

Under this record the jury could not have properly found that the doctrine of last clear chance applied and such finding cannot be sustained. It will not do to submit a situation of the kind disclosed in this record to a jury where the only basis upon which a verdict could be found against the defendant would be pure speculation or prejudice. The record presents no issue

warranting the submission of the case to a jury upon any theory. We conclude therefore that the verdict is not sustained by the evidence, and that the trial court erred in submitting the case to the jury upon the doctrine of last clear chance, and erred in not sustaining defendant's motion to set aside the verdict and grant a new trial. It follows that the case must be and it is reversed.— Reversed.

KINTZINGER, PARSONS, HAMILTON, MITCHELL, STIGER, DONE-GAN, and SAGER, JJ., concur.